JOURNAL ENTRY AND OPINION
{¶ 1} Dwayne Jones ("Jones") appeals his conviction rendered in the Cuyahoga County Common Pleas Court. Jones argues that his conviction is against the manifest weight of the evidence. For the following reasons, we affirm the decision of the trial court.
 {¶ 2} This case arises out of events that occurred on December 10, 2004. On that night, the victim M.B.[1]
("victim"), whose date of birth is March 3, 1990, spent the night at her friend Dena Simones' ("Simones") apartment on West 81st Street and Detroit Avenue. The victim testified that she has known Simones her entire life, Simones is twenty years old, and that at one point, Simones lived with the victim's family. The victim also stated that she had spent the night at Simones' apartment on several previous occasions.
 {¶ 3} On the night of December 10, 2004, the victim's mother, P.B. ("mother") dropped off the victim outside of Simones' apartment. The victim entered the apartment and stated that she, Simones, Simones' one-year old son, and Jones, Simones' boyfriend, were present. The victim testified that she and Simones listened to the radio until approximately midnight when she went to sleep on the couch. The victim reported that she went to sleep on Simones' sectional couch wearing a pair of shorts, underwear, a t-shirt and a bra. The victim reported that Simones' baby slept in the crib while Simones and Jones slept in Simones' bed. However, the victim reported that Jones and Simones got into an argument and Jones moved onto the sectional couch with the victim. The victim stated that she slept on one end of the couch while Jones slept on the other end of the couch.
 {¶ 4} The victim reported that at some point during the night, she awoke to Jones touching her between her legs. The victim stated that Jones had his fingers inside her shorts and underwear and was feeling her genitalia. The victim stated that when she realized what was going on, she closed her legs. After the victim moved, she stated that Jones moved back onto his side of the sectional couch. The victim stated that she pretended she was asleep and did not say anything to Simones.
 {¶ 5} Approximately ten days after this incident occurred, the victim was at her friend Angela's house along with some other girlfriends. While at the house, Simones and Jones arrived. The victim stated that she felt uncomfortable so she went upstairs to speak with Angela. Once inside Angela's bedroom, the victim told Angela what happened on the night of December 10, 2004. After hearing from the victim, Angela advised the victim to tell her mother. The victim later stated that she waited so long to tell anyone because she was embarrassed about what had happened.
 {¶ 6} The following day, December 20, 2004, the victim accompanied by Angela and another friend, told her mother what Jones did to her. The mother contacted the police and Cleveland Police officer Michael Redmond arrived to take her statement. The victim related to Officer Redmond what transpired on the night of December 10, 2004, and Officer Redmond made a police report. He also suggested that the victim seek medical attention.
 {¶ 7} On that same day, the mother took the victim to Fairview General Hospital where nurse Laura Laslo treated the victim. Nurse Laslo testified that she did not conduct a rape kit examination because more than seventy-two hours had passed since the incident and the victim alleged a digital assault.
 {¶ 8} Detective James McPike was assigned to follow up the investigation. Detective McPike conducted interviews with the victim and mother on February 5, 2005. He stated that it was difficult to interview the victim because he believed her to be of low intelligence and he reported that he had to explain different parts of the female anatomy to the victim. Detective McPike also went to Simones' apartment to photograph the layout of the unit. When he arrived at the apartment, Simones informed him that she had thrown out one-half of the sectional couch where this incident occurred, and had moved around the remaining furniture.
 {¶ 9} On April 29, 2005, a Cuyahoga County grand jury returned a two-count indictment against Jones charging him with two counts of rape. Jones pleaded not guilty, executed a written jury waiver, and proceeded to try his case to the bench. The State of Ohio ("State") presented the following witnesses: the victim, the mother, Officer Michael Redmond, Detective James McPike, and nurse Laura Laslo. Jones presented only one witness, Simones, who at the time of trial was engaged to Jones. At the close of the evidence, the trial court denied Jones' motion for acquittal and also indicated to the parties that it would be considering lesser included offenses during its deliberations.
 {¶ 10} On October 31, 2005, the trial court returned a verdict of not guilty on both counts of rape, but found Jones guilty of the lesser included offense in count one of gross sexual imposition. The trial court sentenced Jones to a seventeen-month term of incarceration and classified him as a sexually oriented offender.
 {¶ 11} Jones appeals, raising a single assignment of error:
"Appellant's conviction for gross sexual imposition wasagainst the manifest weight of the evidence."
 {¶ 12} In evaluating a challenge to the verdict based on manifest weight of the evidence, a court sits as the thirteenth juror and intrudes its judgment into proceedings that it finds to be fatally flawed through misrepresentation or misapplication of the evidence by a jury which has clearly "lost its way." Statev. Thompkins, 78 Ohio St.3d 380, 1997-Ohio-52. As the Ohio Supreme Court declared:
"Weight of the evidence concerns `the greater inclination ofthe greater amount of credible evidence offered in a trial, tosupport one side of the issue rather than the other. It indicatesclearly to the jury that the party having the burden of proofwill be entitled to their verdict, if, on weighing the evidencein their minds, they shall find the greater amount of credibleevidence sustains the issue which is to be established beforethem. Weight is not a question of mathematics, but depends on itseffect in inducing belief.' Id. at 387.
 * * * The court, reviewing the entire record, weighs theevidence and all reasonable inferences, considers the credibilityof witnesses and determines whether in resolving conflicts in theevidence, the jury clearly lost its way and created such amanifest miscarriage of justice that the conviction must bereversed and a new trial ordered. The discretionary power togrant a new trial should be exercised only in the exceptionalcase in which the evidence weighs heavily against theconviction." Id. (Internal citations omitted.)
 {¶ 13} However, this court should be mindful that the weight of the evidence and the credibility of witnesses are matters primarily for the trier of fact, and a reviewing court must not reverse a verdict where the trier of fact could reasonably conclude from substantial evidence that the State has proven the offense beyond a reasonable doubt. State v. DeHass (1967), 10 Ohio St.2d 230, at paragraphs one and two of the syllabus. The goal of the reviewing court is to determine whether the new trial is mandated. A reviewing court should grant a new trial only in the "exceptional case in which the evidence weighs heavily against a conviction." State v. Lindsey, 87 Ohio St.3d 479,483, 2000-Ohio-465. (Citation omitted.)
 {¶ 14} The trial court convicted Jones of gross sexual imposition pursuant to R.C. 2907.05, a lesser included offense of rape. The trial court premised its conviction of Jones on the fact that he engaged in sexual contact with the victim, not his spouse, while the victim was impaired.
 {¶ 15} In the present case, the victim testified that on the night of December 10, 2004, she awoke with Jones' hand inside her shorts and underwear feeling her genitalia. The victim closed her legs and Jones stopped touching her. The victim told her mother ten days later, made a police report, and went to the hospital for an exam. Jones argues that because the victim wavered on whether he penetrated the victim's vagina, her testimony is not to be believed. Though the transcript reveals that the victim did waver on whether Jones penetrated her vagina with his fingers, she consistently stated to her mother, police officers, and a nurse, that she woke up with Jones touching her genitalia. Sexual contact, an element of gross sexual imposition, means any nonconsensual physical touching, even through clothing, of the body of another. State v. Ackley, 120 Ohio Misc. 2d 60,2002-Ohio-6002. Moreover, we must also keep in mind that the victim was fifteen at the time of her testimony, suffered from ADHD (attention deficit hyperactivity disorder), and did not fully understand the components of female genitalia.
 {¶ 16} Jones also argues that his sole witness' testimony refutes the victim's allegations. Simones testified on behalf of Jones and stated that she believes the victim is a liar and that even if the victim told her about the alleged incident, she would not have believed her. Simones also testified that just prior to Jones entering the Cuyahoga County Jail, they became engaged.
 {¶ 17} After reviewing the entire record, weighing the evidence, and considering the credibility of the witnesses involved, we find that the trial court did not lose its way in convicting Jones of gross sexual imposition. We find that the greater weight of the evidence supports his conviction. Accordingly, Jones' sole assignment of error is overruled.
Judgment affirmed.
It is ordered that appellee recover from appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Cooney, P.J., and Rocco, J., concur.
[1] This court protects the identity of all juvenile parties.