JOURNAL ENTRY AND OPINION
{¶ 1} After entering pleas of guilty to charges of rape and gross sexual imposition, defendant-appellant Rashaad Wilson appeals from the trial court's classification of him as a sexual predator.
 {¶ 2} Wilson presents one assignment of error in which he claims the trial court's classification lacks adequate evidentiary support. Based upon the record, this court cannot agree. Consequently, the trial court's classification is affirmed.
 {¶ 3} Wilson, nineteen years old at the time, originally was indicted in this case on three counts that charged him with rape, gross sexual imposition and *Page 2 
kidnapping. All of the counts referred to the same ten-year-old female victim and all were alleged to have occurred on the same day.
 {¶ 4} The first count contained a furthermore clause that alleged the offense was committed with force. Each of the counts additionally carried a sexually violent predator specification. The final count also carried a sexual motivation specification.
 {¶ 5} Eventually, the state offered a plea agreement whereby, in exchange for Wilson's guilty plea, the first two counts were amended, deleting the furthermore clause and the specifications, and the third count was dismissed. The trial court conducted a thorough colloquy with Wilson before accepting his plea.
 {¶ 6} The court then set a date for sentencing, to be preceded by a sexual classification hearing. The court referred Wilson for a presentence report and a psychological assessment prior to conducting the hearing.
 {¶ 7} At the subsequent sexual classification hearing, neither party called witnesses to testify; rather, each party stipulated to and relied upon the reports received by the trial court. The prosecutor additionally called the court's attention to the "situation" that led to the incident.
 {¶ 8} According to the documents contained in the record, Wilson lived in the home of his adoptive parents, who had adopted him when he was six years old. His parents had several other adopted children, including the ten-year-old victim, living in their home. *Page 3 
 {¶ 9} On the evening of May 26, 2006, some of them requested their older sister to bake cookies. As she did so, she noticed Wilson "peek[ing] out of the bathroom door, as if to see who was in the kitchen." Upon seeing her, Wilson told her to leave; he said he would do the baking.
 {¶ 10} The older sister became suspicious of Wilson's behavior, so she and another sister surreptitiously watched the bathroom door. They saw Wilson leave, followed a few minutes later by the ten-year-old victim. The older girls informed their mother of the incident. All remembered a previous "problem" involving Wilson and the victim "earlier in the year."
 {¶ 11} On that occasion, two of Wilson's adoptive sisters saw him at night in the victim's room, "standing over the victim's bed nude," watching her as she slept. Wilson explained his behavior by claiming he was looking for his clothes. However, his room was in the basement, while the victim's was on the third floor. After that occasion, Wilson was forbidden from entering that portion of the home.
 {¶ 12} Shortly after learning from the older girls of this latest incident, the mother confronted both Wilson and the victim. The victim eventually indicated that Wilson had summoned her to the bathroom; once inside, he told her to remove her clothes and to "suck his private," and then he "put his `thing' inside of her." The mother verified that the victim's underwear showed signs of wetness, then took her to the hospital for a "rape exam." *Page 4 
 {¶ 13} Wilson provided statements to the police after his arrest. He claimed the victim "gestured to him like she wanted him to play with her vagina and he complied." While he admitted touching the victim, he denied committing any further sexual activity.
 {¶ 14} By the time of Wilson's interview for the presentence report, however, he admitted he not only "play[ed] with her vagina," but that he "raped" the victim during the incident. Wilson told the probation officer that he regretted his actions.
 {¶ 15} The sexual predator evaluation prepared by the court psychiatric clinic indicated that, pursuant to the STATIC-99 actuarial instrument, Wilson had a "score of two," which placed him in the "Moderate-Low" risk of recidivism category. Wilson also "presented] with three of the risk factors most significantly correlated with sexual offense recidivism." Eight other factors, however, were not present.
 {¶ 16} After considering the presentence report, the psychological assessment, and the arguments of counsel, the trial court considered each of the statutory recidivism factors on the record. The court determined that two of them applied, viz., Wilson's age in relation to the victim's age, and the "additional behavioral characteristic" that after his family members caught him standing "over the victim naked," his mother took measures intended to keep him away from the victim, but Wilson nevertheless found a way to commit the offenses. The trial court indicated it was particularly troubled by this last factor. *Page 5 
 {¶ 17} Based upon the foregoing analysis, the trial court found Wilson to be a sexual predator. The court subsequently imposed a sentence upon him for his convictions that totaled five years.
 {¶ 18} Wilson appeals the trial court's classification of him as a sexual predator with one assignment of error, as follows:
 "The trial court erred by imposing the sexual predator label where the record does not support by clear and convincing evidence that appellant is likely to engage in one or more sexually oriented offenses in the future."
 {¶ 19} Wilson argues the evidence presented to the trial court does not support a conclusion that he is "likely to engage in the future" in sexual offenses; therefore, his classification as a sexual predator should be reversed.
 {¶ 20} The Ohio Supreme Court has directed a trial court to engage in a weighing process when considering any factors it finds relevant to a sexual predator determination. State v. Thompson, 92 Ohio St.3d 584,2001-Ohio-1288. R.C. 2950.09(B) requires the trial court to discuss on the record those statutory factors upon which it actually relied in making a determination as to the offender's status. State v.Eppinger, 91 Ohio St.3d 158, 2001-Ohio-247. However, a specific number of factors is not required, "so long as [the trial court's] determination is grounded upon clear and convincing evidence." State v.Pierce, Cuyahoga App. No. 88470, *Page 6 2007-Ohio-3665, ¶ 14, citing State v. Purser, 153 Ohio App.3d 144, 149,2003-Ohio-3523.
 {¶ 21} The supreme court also has set forth this court's standard of review of the trial court's determination. The decision "must be viewed under the civil manifest-weight-of-the-evidence standard and may not be disturbed when the judge's findings are supported by some competent, credible evidence." State v. Wilson, 113 Ohio St.3d 382, 2007-Ohio-2202, at the syllabus.
 {¶ 22} This civil standard of review affords the trial court more deference than the criminal standard. Id. Thus, the standard is satisfied if "there is something of substance" in the evidence "from which one could draw a logical conclusion concerning the likelihood of recidivism," enough "to reach a firm belief or conviction" that the defendant is "likely" to commit a future sexual offense. State v.Robertson, Cuyahoga App. No. 89367, 2007-Ohio-5704, ¶8, citing State v.Arthur (Aug. 16, 2001), Cuyahoga App. No. 77770.
 {¶ 23} The record in this case satisfies the foregoing standard. As noted by the trial court, there was evidence that the incident that led to Wilson's convictions for rape and gross sexual imposition was not an isolated one. Rather, Wilson began a stalking, overtly sexual type of behavior with his ten-year-old-sister some months previously, when he went to her bedroom at night, naked, and stood over her as she *Page 7 
slept. Efforts to proscribe his behavior proved fruitless, as the incident in the bathroom illustrated.
 {¶ 24} Wilson contends that since he presented with a low score on the STATIC-99 assessment and since few of the statutory factors were met, his classification is undeserved. This argument previously has been rejected. The STATIC99, as an actuarial assessment, cannot "purport to make an individualized assessment of future conduct any more than a life expectancy table can provide an accurate prediction of a particular individual's longevity." State v. Pierce, supra, at footnote 1. Thus, the test has limited usefulness.
 {¶ 25} Wilson additionally contends that since in this case few of the psychological recidivism factors were met, the trial court's determination is unjustified. Once again, this court disagrees. The facts of this case demonstrate Wilson focused a sexual interest on his ten-year-old adopted sister until he succeeded in sexually victimizing her. The "paramount" purpose behind R.C. 2950.09 is to protect children from those persons in society who would prey upon them. State v.Thompson (1999), 140 Ohio App.3d 638, 646.
 {¶ 26} The record in this case reveals the trial court conducted an appropriate hearing pursuant to State v. Eppinger, 91 Ohio St.3d 158,2001-Ohio-247, complied with its statutory duties, and carefully evaluated the evidence presented in conjunction with the statutory criteria. Moreover, its determination is supported by *Page 8 
competent, credible evidence. State v. Blanchard, Cuyahoga App. No. 88630, 2007-Ohio-3418. Under these circumstances, this court will not disturb its decision. State v. Fleming, Cuyahoga App. No. 85328,2006-Ohio-706.
 {¶ 27} Accordingly, Wilson's assignment of error is overruled.
 {¶ 28} The trial court's classification of Wilson as a sexual predator is affirmed. It is ordered that appellee recover from appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
KENNETH A. ROCCO, JUDGE
 SEAN C. GALLAGHER, P.J., and MELODY J. STEWART, J., CONCUR *Page 1