JOURNAL ENTRY AND OPINION
{¶ 1} Appellant Clifford Garner appeals his convictions for one count of rape and two counts of gross sexual imposition, and his classification as a sexual predator. He assigns the following errors for our review:
 "I. The trial court erred in not entering judgment of acquittal as to all the counts of the indictment."
 "II. The jury verdicts as to counts one, two, and four were against the manifest weight of the evidence."
 "III. The trial court erred in determining that appellant is a sexual predator."
 {¶ 2} Having reviewed the record and pertinent law, we affirm Garner's convictions and sexual predator classification. The apposite facts follow.
 {¶ 3} The Cuyahoga County Grand Jury indicted Garner on one count of rape, two counts of gross sexual imposition, and two counts of kidnapping, arising out of Garners' sexual conduct with the victims.
 Jury Trial {¶ 4} Clifford Garner was the boyfriend of the five-year old and sixteen year-old victims' mother. He had lived with the family off and on for a four-year period. He babysat the five-year old victim while the mother attended night school three times a week and helped care for the children.
 {¶ 5} In the early morning hours of May 24, 2006, Garner had returned from a bachelor party. According to the mother, he smelled of alcohol and went down stairs to shower. She does not know when he returned to bed. The fifteen-year old *Page 4 
daughter's bedroom was next to the bathroom. The fifteen-year old claimed that she was half asleep when Garner entered her bedroom. He sat on her bed and felt her buttocks through her comforter and pajamas. He did not stop until she wiggled her shoulders. He then quickly left the room. The victim did not actually see Garner because her eyes were closed. However, she could tell by the touch it was not her mother, sister, or dog.
 {¶ 6} She told her mother about the incident the next evening. The mother confronted Garner; he denied touching the victim. He claimed he did enter her room but only to turn off her television. The victim claimed the family always slept with the televisions on and that Garner did not turn her television off.
 {¶ 7} Several months later on August 31, 2006, Garner was left home alone with the five-year old victim. The victim testified that Garner placed his penis on her lips as she laid on her mother's bed, where she fell asleep watching television. She said when she heard her mother's car pull into the driveway, she ran downstairs and greeted her mother at the door.
 {¶ 8} She told her mother that "Cliff did it." When her mother asked what he did, the daughter used a teddy bear to show her and told the mother he put his "private part" on her lips. The mother claimed she saw what she thought was "slobber" on the child's cheek, but concluded it may have been semen. Garner denied touching the child. The mother did not call the police until the following Monday after discussing the matter with her boss. *Page 5 
 {¶ 9} The jury found Garner guilty of one count of rape and gross sexual imposition against the five-year old victim, and one count of gross sexual imposition against the teenage victim. The jury acquitted Garner of both counts of kidnapping. The trial court sentenced Garner to life in prison for the rape count, five years for the gross sexual imposition, and 18 months on the second gross sexual imposition count. The rape and first gross sexual imposition count merged but were to be served consecutively to the second gross sexual imposition count.
 Insufficient Evidence {¶ 10} In his first assigned error, Garner argues his convictions for gross sexual imposition against the fifteen-year old victim and rape against the five-year old victim were not supported by sufficient evidence. We disagree.
 {¶ 11} The sufficiency of the evidence standard of review is set forth in State v. Bridgeman[1] as follows:
 "Pursuant to Criminal Rule 29(A), a court shall not order an entry of judgment of acquittal if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt."[2] *Page 6 
 {¶ 12} Bridgeman must be interpreted in light of the sufficiency test outlined in State v. Jenks,[3] in which the Ohio Supreme Court held:
 "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence submitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. (Jackson v. Virginia (1979), 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560, followed.)"
 "(1) Fifteen-year old victim:
 {¶ 13} Garner argues that his conviction for gross sexual imposition against the fifteen-year old victim was not supported by sufficient evidence because he could not possibly receive sexual gratification by touching the victim over her covers and pajamas. *Page 7 
 {¶ 14} Garner was indicted for gross sexual imposition against the sixteen-year old victim pursuant to R.C. 2907.05(A)(1). This section defines the elements of gross sexual imposition as:
 "(A) No person shall have sexual contact with another, not the spouse of the offender; cause another not the spouse of the offender, to have sexual contact with the offender; * * * when any of the following applies:
 "(1) The offender purposely compels the other person, or one of the persons, to submit by force or threat of force."
 {¶ 15} Pursuant to R.C. 2907.01(B), "`Sexual contact' means any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or, if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person."
 {¶ 16} In the instant case, Garner fondled the victim's buttocks over her comforter and pajamas. Case law has established that contact with the skin is not necessary to constitute "sexual conduct" under the gross sexual imposition statute.[4] Merely touching a covered erogenous zone is sufficient. Because the buttock region is considered an erogenous zone, the evidence was sufficient to support "sexual conduct" under the gross sexual imposition statute. *Page 8 
 {¶ 17} Garner also contends there was no evidence he forced the victim. "Force" means any violence, compulsion, or constraint physically exerted by any means upon or against a person or thing.[5] However, pursuant to R.C. 2907.05(C), "A victim need not prove physical resistance to the offender in prosecutions [for gross sexual imposition]."
 {¶ 18} The Ohio Supreme Court has addressed the issue of "force or threat of force" several times. In analyzing "force or threat of force" in the context of the rape statute, R.C. 2907.02, the Court in State v.Eskridge[6] held that the amount of force necessary to commit the offense "depends upon the age, size and strength of the parties and their relation to each other."[7] Specifically, in cases involving the "filial obligation of obedience to a parent," a lesser showing of force may be sufficient. Given the inherent coercion in parental authority when a parent abuses his or her child, the requisite force "`need not be overt and physically brutal, but can be subtle and psychological. As long as it can be shown that the * * * victim's will was overcome by fear or duress, the forcible element * * * can be established.'"[8] *Page 9 
 {¶ 19} The Supreme Court clarified Eskridge in State v.Schaim,[9] stating that in Eskridge, it "recognized that coercion is inherent in the parent-child relationship and that under these special circumstances `[f]orce need not be overt and physically brutal, but can be subtle and psychological.'"[10]
 {¶ 20} In State v. Dye,[11] the Supreme Court further held that the lesser showing of force principles established in Eskridge also applied to situations where a parent-child relationship was absent, but the adult defendant stood in a position of authority over the child victim and that, therefore, force or threat of force could be met "without evidence of express threat of harm or evidence of significant physical restraint."[12]
 {¶ 21} In the instant case, there is no dispute that Garner held a position of authority over the victim. He had lived with the family off and on over four years time. He watched the children for the mother while she attended night school and helped care for the children. Therefore, the force or threat of force could be met "without evidence of express threat of harm or evidence of significant physical *Page 10 
restraint." The victim testified in the instant case, she was scared when Garner
touched her.
 {¶ 22} Although Garner compares the instant case to this court's decision in State v. Byrd,[13] we conclude Byrd is distinguishable. InByrd we held "force or threat of force" element was not met where a fifteen-year old victim awoke in her bed to find the adult defendant touching her genitals over her clothing because he did not apply any force in relation to her body or clothing; because he did not hold a position of authority over her; because, as the victim became aware of the touching, she immediately got up and left the area; and, because the contact did not occur due to fear or duress.
 {¶ 23} Here, the victim was aware of Garner being in the room prior to the touching commencing. He applied enough force that she could feel his hand touching her buttocks through her comforter and pajamas. Garner also held a position of authority over the victim as her mother's long-time live-in boyfriend. She stated she did not scream when he touched her because she was "too scared."[14] She cried after Garner left the room because she was scared. Under these circumstances we conclude the element of force was met.
 (2) Five-year old victim: *Page 11 
 {¶ 24} Garner also contends the evidence was insufficient to support the rape conviction against the five-year old victim because there was no evidence that fellatio took place and no evidence that he forced the victim.
 {¶ 25} R.C. 2907.02(A)(1)(b) provides in pertinent part:
 "(A)(1) No person shall engage in sexual conduct with another who is not the spouse of the offender * * * when either of the following apply:
 "* * *
 "(b) The other person is less than thirteen years of age, whether or not the offender knows the age of such person."
 {¶ 26} Garner appears to believe sexual conduct involves penetration; however, he misinterprets the definition of "sexual conduct." R.C.2907.01(A) defines "sexual conduct" as follows:
 "`Sexual conduct' means vaginal intercourse between a male and female; anal intercourse, fellatio, and cunnilingus between persons regardless of sex. * * * Penetration, however slight, is sufficient to complete vaginal or anal intercourse."
 {¶ 27} Thus, the statutory definition of "sexual conduct" includes not only penetration via vaginal or anal intercourse, but also includes fellatio and cunnilingus, neither of which require penetration. *Page 12 
 {¶ 28} Fellatio has been defined as "[a] sexual act in which the mouth or lips come into contact with the penis."[15] Furthermore, courts have previously held that "fellatio is committed by touching the male sex organ with any part of the mouth."[16] In the instant case, the victim clearly stated that her lips came into contact with Garner's penis. Therefore, sufficient evidence of fellatio was presented.
 {¶ 29} Garner also contends the force element was absent from the rape of the victim. However, as we discussed above, an inherent coercion is present when a parental authority abuses a child. The requisite force "`need not be overt and physically brutal, but can be subtle and psychological.'"[17] Garner, as the live-in boyfriend of the victim's mother, possessed parental authority over the five-year old, thus, overt, physical force was not necessary to satisfy the force necessary for the rape conviction.
 (3) Kidnapping counts:
 {¶ 30} Garner also contends the prosecutor should not have charged him with kidnapping because there was no evidence to support such a charge. The jury *Page 13 
found Garner not guilty of the kidnapping charges; therefore, no prejudicial error occurred.
 {¶ 31} Garner contends being charged for kidnapping led the jury to enter a compromised verdict on a factually weak case. However, based on our discussion above, the case against Garner was not weak. Thus, we fail to see how the jury's finding Garner not guilty of kidnapping led to a compromised verdict. Accordingly, Garner's first assigned error is overruled.
 Manifest Weight {¶ 32} In his second assigned error, Garner argues that his convictions were not supported by credible, reliable evidence and were thus against the manifest weight of the evidence. We disagree.
 {¶ 33} In State v. Wilson,[18] the Ohio Supreme Court recently addressed the standard of review for a criminal manifest weight challenge, as follows:
 "The criminal manifest-weight-of-the-evidence standard was explained in State v. Thompkins (1997), 78 Ohio St.3d 380, 1997-Ohio-52, 678 N.E.2d 541. In Thompkins, the court distinguished between sufficiency of the evidence and manifest weight of the evidence, finding that these concepts differ both qualitatively and quantitatively. Id. at 386, 678 N.E.2d 541. The court held that *Page 14 sufficiency of the evidence is a test of adequacy as to whether the evidence is legally sufficient to support a verdict as a matter of law, but weight of the evidence addresses the evidence's effect of inducing belief. Id. at 386-387, 678 N.E.2d 541. In other words, a reviewing court asks whose evidence is more persuasive — the state's or the defendant's? We went on to hold that although there may be sufficient evidence to support a judgment, it could nevertheless be against the manifest weight of the evidence. Id. at 387, 678 N.E.2d 541. `When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a `thirteenth juror' and disagrees with the factfinder's resolution of the conflicting testimony.' Id. at 387, 678 N.E.2d 541, citing Tibbs v. Florida (1982), 457 U.S. 31, 42, 102 S.Ct. 2211, 72 L.Ed.2d 652."
 {¶ 34} However, an appellate court may not merely substitute its view for that of the jury, but must find that "the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial *Page 15 
ordered."[19] Accordingly, reversal on manifest weight grounds is reserved for "the exceptional case in which the evidence weighs heavily against the conviction."[20]
 (1) Fifteen-year old victim:
 {¶ 35} Garner contends the fifteen-year old victim's testimony was not credible because she was in a "deep sleep" when he allegedly came into her room and felt her buttocks; therefore, she would have no recollection of what occurred. Our review of the record shows the victim did not testify she was in a deep sleep. She testified she was "half asleep," listening to the television[21] when Garner entered the room. She stated she felt him sit down on her bed, and that initially she thought it was her little sister or her dog, until he started feeling her buttocks. She then knew it was Garner. Therefore, she was sufficiently awake to feel him sitting on the bed and felt the pressure of his hand as he fondled her.
 {¶ 36} Garner also contends the victim was not credible because she said the incident occurred around 1:00 a.m. According to the mother, he did not come home until 3:00 a.m. Garner did not testify himself; therefore, the evidence that he came home at 3:00 a.m. was based on the mother's estimate. The victim testified she had looked at the clock after Garner left the room and recalled it was around 1:00 a.m. *Page 16 
We conclude the inconsistency regarding the time did not result in a manifest miscarriage of justice. The mother and the victim's best friend both testified that the victim's behavior changed after the alleged incident, supporting the allegation that something upsetting occurred that night. The victim was also positive that it was Garner who touched her.
 {¶ 37} Finally, Garner contends the victim was biased against Garner because he had broken up with her mother twice before and refused to marry her mother. However, the victim testified she was not aware of the dispute between Garner and her mother regarding marriage, and her best friend corroborated this. Therefore, whether the victim had a motive to lie about the incident was a matter for the jury to resolve.
 (2) Five-year old victim:
 {¶ 38} Garner contends the five-year old victim was not credible because she stated she was sleeping when Garner allegedly placed his penis on her lips; therefore, she would have no recollection of the incident. He also contends it is not believable that he would have allowed semen to remain on the child's face for the mother to see.
 {¶ 39} The child testified she awoke to find Garner placing his penis on her lips. Therefore, it is likely the penis pressing on her lips awoke the child. Moreover, the mother claimed a substance on the child's face appeared to be slobber, but she concluded it was semen after the child told her what Garner had done. We cannot *Page 17 
conclude for sure that the substance was semen as the substance was not tested. In any case, given the child's testimony against Garner, we conclude the jury did not lose its way in finding Garner guilty of rape. Accordingly, Garner's second assigned error is overruled.
 Sexual Predator Classification {¶ 40} In his third assigned error, Garner contends the trial court erred by classifying him as a sexual predator. We disagree.
 {¶ 41} The Ohio Supreme Court has recently held the applicable standard of review for a sexual-predator classification is the civil manifest-weight-of-the-evidence standard.[22] Under this standard, judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court.[23] The factual findings are presumed to be correct since the trial court is in the best position to determine credibility.[24] This court may not reverse a sexual-predator classification "simply because it holds a different opinion concerning the credibility of the witnesses and evidence submitted before the trial court."[25] *Page 18 
 {¶ 42} In Wilson, the Court outlined the proper procedure that an appellate court must undertake when reviewing a decision classifying a criminal defendant as a sexual predator. The court must "evaluate * * * the trial judge's rationale [and] any of the evidence the judge cited in support of his decision * * *."[26] In so doing, the court must bear in mind that "[m]ere disagreement with the trial court's findings is not sufficient to overturn them."[27] After such a review, the court must affirm the classification if there is some competent, credible evidence that goes to each of its essential elements.
 {¶ 43} When deciding whether a defendant is a sexual predator, the trial court is to consider the non-exhaustive list of criteria set forth in R.C. 2950.09(B)(3). However, a trial court is not required to find a specific number of factors under R.C. 2950.09(B)(3) before it can adjudicate an offender a sexual predator, so long as its determination is grounded upon clear and convincing evidence.[28] Moreover, R.C.2950.09(B) does not require that each factor be met; it simply requires the trial court to consider those factors that are relevant.[29]
 {¶ 44} In the instant case, the trial court cited the following factors in determining that Garner was a sexual predator: (1) the age difference between *Page 19 
Garner, who was 35 at the time of the offense and the five-year old victim, (2) Garner has an extensive criminal history for theft-type offenses and forgery, (3) two victims were involved, and (4) Garner abused his position of trust with the children. The trial court weighed these factors against the fact that Garner received a low Static-99 and Abel assessment test score.
 {¶ 45} Moreover, this court has previously rejected the argument that a low test score correlates to a low risk of reoffending:
 "The utility of the Static-99 evaluation as a diagnostic tool for individual risk assessment is open to question. The evaluation merely performs an actuarial assessment of an offender's chances of reoffending. See State v. Colpetzer, Cuyahoga App. No. 79983, 2002-Ohio-967. While actuarial risk assessments are said to outperform clinical risk assessments, actuarial assessments do not, and cannot, purport to make a prediction of a particular offender's future conduct. In fact, the use of an actuarial assessment could arguably be at odds with Ohio's statutory scheme. R.C. 2950.01(E) and R.C. 2950.09(B) require a determination that the offender is likely to engage in the future in one or more sexually oriented offenses. This is an individualized determination for a particular offender. The Static-99 cannot purport to make an individualized assessment of future conduct any more than a life expectancy table can provide an accurate prediction of a particular individual's longevity."[30]
 {¶ 46} The evidence considered by the trial court was both competent and credible. While Garner asks this court to reweigh the evidence presented below, *Page 20 
our review is limited to determining whether some competent, credible evidence supports the elements of the classification. With such evidence in the record, our inquiry is at an end. Accordingly, Garner's third assigned error is overruled.
Judgment affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate be sent to said court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
JAMES J. SWEENEY, A.J., and FRANK D. CELEBREZZE, JR., J., CONCUR
[1] (1978), 55 Ohio St.2d 261, syllabus.
[2] See, also, State v. Apanovitch (1987), 33 Ohio St.3d 19, 23;State v. Davis (1988), 49 Ohio App.3d 109, 113.
[3] (1991), 61 Ohio St.3d 259, paragraph two of the syllabus.
[4] State v. Crosky, 10th Dist. No. 06AP-655,2008-Ohio-145 at para;50; State v. West, 10th District No. 06AP-11, 2006-Ohio-6259 at para;20; State v. Jones, Cuyahoga App. No. 87411, 2006-Ohio-5249 at para;15; State v. Goins, 12th Dist. No. CA2000-09-190, 2001-Ohio-8647; State v.Young (Aug. 15, 1997), 4th Dist. No. 96CA1780; State v.Gonzalez (Apr. 21, 1994), Cuyahoga App. No. 64777; State v. Curry(Feb. 27, 1991), 9th Dist. No. 90CA004862.
[5] R.C. 2901.01(A)(1).
[6] (1988), 38 Ohio St.3d 56.
[7] Id. at paragraph one of the syllabus.
[8] Id. at 58-59, quoting State v. Fowler (1985), 27 Ohio App.3d 149,154.
[9] 65 Ohio St. 3d 51, 1992-Ohio-31.
[10] Id. at 54-55, quoting Eskridge, 38 Ohio St.3d at 58-59.
[11] 82 Ohio St.3d 323, 1998-Ohio-234.
[12] Id. at 329 (finding adult defendant held position of authority over child victim given the defendant had known the child's mother for seven years, had developed a close relationship with the child, and the child's mother had instructed the child to obey the defendant while in his care).
[13] Cuyahoga App. No. 83415, 2003-Ohio-3958.
[14] Tr. at 399.
[15] Black's Law Dictionary (6 Ed. 1990) 616.
[16] State v. Long (1989), 64 Ohio App.3d 615, 618. See, also,State v. Powell (Dec. 15, 2000), 2nd Dist. App. No. 18095; State v. Turvey (1992), 84 Ohio App.3d 724; State v. Clark
(1995), 106 Ohio App.3d 426, 429.
[17] Schaim, supra.
[18] 113 Ohio St.3d 382, 2007-Ohio-2202.
[19] State v. Thompkins, supra at 387.
[20] ld.
[21] Tr. at 391.
[22] State v. Wilson, 113 Ohio St.3d 382, 2007-Ohio-2202.
[23] Id. at ¶ 24, citing C.E. Morris Co. v. Foley Constr. Co. (1978),54 Ohio St.2d 279.
[24] Id., citing Seasons Coal Co., Inc. v. Cleveland (1984),10 Ohio St.3d 77, 80-81.
[25] Id.
[26] Id. at ¶ 26.
[27] Id.
[28] State v. Purser, 153 Ohio App.3d 144, 149, 2003-Ohio-3523.
[29] State v. Grimes (2001), 143 Ohio App.3d 86, 89.
[30] State v. Ellison, Cuyahoga App. No. 78256, 2002-Ohio-4024. See, also, State v. Wilson, Cuyahoga App No. 89419, 2008-Ohio-55; State v.Vanek, Cuyahoga App. No. No. 89125, 2007-Ohio-6194. *Page 1