[Cite as *State v. Tullio*, 2025-Ohio-206.]

# IN THE COURT OF APPEALS OF OHIO

## SEVENTH APPELLATE DISTRICT
## MAHONING COUNTY

STATE OF OHIO,

Plaintiff-Appellee,

v.

ROBERT J. TULLIO,

Defendant-Appellant.

---

**OPINION AND JUDGMENT ENTRY**
**Case No. 24 MA 0068**

---

Criminal Appeal from the
Court of Common Pleas of Mahoning County, Ohio
Case No. 22 CR 583

**BEFORE:**
Mark A. Hanni, Cheryl L. Waite, Carol Ann Robb, Judges.

---

**JUDGMENT:**
Affirmed.

---

*Atty. Lynn Maro*, Mahoning County Prosecutor*, and *Atty. Edward A. Czopur*, Assistant Prosecuting Attorney, for Plaintiff-Appellee and

*Atty. James R. Wise*, for Defendant-Appellant.

Dated: January 21, 2025

**HANNI, J.**

{¶1} Defendant-Appellant, Robert J. Tullio, appeals from a July 11, 2024 Mahoning County Common Pleas Court judgment sentencing him to a total of 44.5 years to life in prison after a jury found him guilty of 3 counts of rape and 10 counts of gross sexual imposition (GSI). He also entered a guilty plea to 3 counts of pandering obscenity to a minor. All of these offenses were committed against two of his step-daughters and a step-granddaughter.

{¶2} Appellant asserts that sufficient evidence does not support his convictions on Counts 15 and 16 for GSI involving M.R., one of his step-daughters. He further contends that the trial court erred in sentencing him because it failed to consider the guidelines outlined in R.C. 2929.11, *et seq.*

{¶3} For the following reasons, we find that sufficient evidence supports Counts 15 and 16 for GSI and the court properly considered R.C. 2929.11, *et seq.* when it sentenced Appellant.

{¶4} On February 16, 2023, a Mahoning County Grand Jury issued a superseding indictment alleging that Appellant committed sexual offenses against his step-granddaughter I.H. and his step-daughter H.R.

{¶5} Appellant was also indicted for committing the following offenses against his step-daughter M.R., who was born on September 4, 1987:

1 count of GSI in violation of R.C. 2907.05(A)(4), a third-degree felony, which allegedly occurred on or about September 4, 1997 through September 3, 2000 (Count 15); and

1 count of GSI in violation of R.C. 2907.05(A)(1), a fourth-degree felony, which allegedly occurred on or about September 4, 2000 through December 31, 2003 (Count 16).

{¶6} The Mahoning County Grand Jury also indicted Appellant on ten counts of pandering obscenity involving a minor in violation of R.C. 2907.321(A)(5) and (C) on October 6, 2022, fourth-degree felonies (Counts 17-26).

**{¶7}** On May 9, 2023, the court granted Appellant's motion to sever the pandering obscenity counts from the rest of the counts. Appellant later entered a guilty plea to Counts 17-19 and the State dismissed Counts 20-26.

**{¶8}** On April 9, 2024, a jury heard Appellant's case on the remaining counts, with I.H., M.R., and H.R., among others, testifying for the State. The jury found Appellant guilty on all Counts in the superseding indictment, except for the rape offenses in Counts 1, 4, and 5.

**{¶9}** On June 26, 2024, the trial court issued a judgment entry sentencing Appellant to: 5 years of imprisonment on each of Counts 2 and 3, to be served consecutively to each other; 18 months of imprisonment on each of Counts 6, 7, 8, to be served consecutively to each other and all previous Counts; 10 years to life in prison each on Counts 9 and 10, to be served consecutively to each other and all prior Counts; 5 years of imprisonment on Count 11, to run consecutively to all prior Counts; 1 year of imprisonment each for Counts 12, 13, and 14, to be served concurrently to one another and concurrently to all prior Counts; 5 years in prison for Count 15, to be served consecutively to Counts 2, 3, 6, 7, 8, 9, 10, and 11 and concurrently to all other prior Counts; and 1 year in prison on Count 16, to be served concurrently to all other Counts. (J.E. Sent. June 26, 2024). Appellant was sentenced to a total of 44.5 years to life in prison and designated a Tier III Sex Offender. (J.E. Sent. June 26, 2024).

**{¶10}** On July 11, 2024, Appellant entered a guilty plea to Counts 17-19 of the superseding indictment and the State moved to dismiss Counts 20-26. The State agreed to recommend a three year prison sentence to be served concurrently to his sentence on the other Counts in the indictment. The court held a plea hearing and accepted Appellant's guilty plea and the jointly recommended sentence. The court sentenced Appellant to one year on each Count in Counts 17-19 and ran them consecutively to each other but concurrently with the other Counts.

**{¶11}** On July 23, 2024, Appellant filed a notice of appeal asserting two assignments of error.

**{¶12}** Appellant's first assignment of error states:

**THE CONVICTION OF THE DEFENDANT (COUNTS 15 AND 16) FOR GROSS SEXUAL IMPOSITION WAS WITHOUT SUFFICIENT EVIDENCE**

**IN WHICH TO CONVICT THE DEFENDANT AND THE VERDICT WAS AGAINST THE WEIGHT OF THE EVIDENCE.**

{¶13} Appellant asserts that sufficient evidence does not support his GSI convictions as to M.R. and those convictions were against the manifest weight of the evidence. He cites the definition of "sexual contact" in R.C. 2907.01(B) and contends that such conduct was not established at trial to sustain his GSI convictions under R.C. 2907.05. He also contends that no evidence established that he was sexually aroused or gratified in order to establish sexual contact. He cites to M.R.'s testimony that he was "dry humping" her without explaining its meaning and he contends that she did not testify as to sexual arousal or gratification.

{¶14} Sufficiency of the evidence is the legal standard applied to determine whether the case may go to the jury or whether the evidence is legally sufficient as a matter of law to support the verdict. *State v. Smith*, 80 Ohio St.3d 89, 113 (1997). Sufficiency is a test of adequacy. *State v. Thompkins*, 1997-Ohio-52 (1997). Whether the evidence is legally sufficient to sustain a verdict is a question of law. *Id.* In reviewing the record for sufficiency, the relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements proven beyond a reasonable doubt. *Smith*, 80 Ohio St.3d at 113. When evaluating the sufficiency of the evidence to prove the elements, it must be remembered that circumstantial evidence has the same probative value as direct evidence. *State v. Thorn*, 2018-Ohio-1028, ¶ 34 (7th Dist.), citing *State v. Jenks*, 61 Ohio St.3d 259, 272-273 (1991) (superseded by state constitutional amendment on other grounds).

{¶15} In determining whether a verdict is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences and determine whether, in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *Thompkins*, 1997-Ohio-52. "Weight of the evidence concerns 'the inclination of *the greater amount of credible evidence*, offered in a trial, to support one side of the issue rather than the other.'" *Id.* (Emphasis sic.). In making its determination, a reviewing court is not required to view the evidence

in a light most favorable to the prosecution but may consider and weigh all of the evidence produced at trial.  *Id.* at 390.

**{¶16}**  Only when "it is patently apparent that the factfinder lost its way," should an appellate court overturn the jury verdict.  *Id.*, citing *State v. Woullard*, 2004-Ohio-3395, (2d Dist.).  If a conviction is against the manifest weight of the evidence, a new trial is to be ordered.  *Thompkins*, *supra*, at 387.  "No judgment resulting from a trial by jury shall be reversed on the weight of the evidence except by the concurrence of all three judges hearing the cause."  *State v. Miller*, 2002-Ohio-4931, ¶ 36, quoting Ohio Const., art. IV, § 3(B)(3).

**{¶17}**  The jurors are free to believe some, all, or none of each witness' testimony and they may separate the credible parts of the testimony from the incredible parts.  *State v. Barnhart*, 2010-Ohio-3282, ¶ 42 (7th Dist.), citing *State v. Mastel*, 26 Ohio St.2d 170, 176 (1971).  When there are two fairly reasonable views of the evidence or two conflicting versions of events, neither of which is unbelievable, this Court will not choose which one is more credible.  *State v. Gore*, 131 Ohio App.3d 197, 201 (7th Dist.1999).

**{¶18}**  Count 15 of the superseding indictment provided that Appellant:

On or about 9/4/1997 through 9/3/2000, * * * did have sexual contact with M.R. (DOB 9/4/1987), not his spouse, and the age of M.R. was less than thirteen years of age, whether or not Robert J. Tullio knew the age of that person, in violation of Section 2907.05(A)(4) of the Ohio Revised Code, a Felony of the Third Degree, and against the peace and dignity of the State of Ohio.

**{¶19}**  Count 16 of the superseding indictment provided that Appellant:

On or about 9/4/2000 through 12/31/2003, * * * did have sexual contact with M.R. (DOB 9/4/1987), not his spouse, by purposely compelling such person(s) to submit by force or threat of force, in violation of Section 2907.05(A)(1) of the Ohio Revised Code, a Felony of the Fourth Degree, and against the peace and dignity of the State of Ohio.

**{¶20}**  R.C. 2907.05(A)(1) provides the following:

Case No. 24 MA 0068

No person shall have sexual contact with another, not the spouse of the offender; cause another, not the spouse of the offender, to have sexual contact with the offender; or cause two or more other persons to have sexual contact when any of the following applies:

(1) The offender purposely compels the other person, or one of the other persons, to submit by force or threat of force.

. . .

(4) The other person, or one of the other persons, is less than thirteen years of age, whether or not the offender knows the age of that person.

**{¶21}** "Sexual contact" is defined under R.C. 2907.01(B) as "any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or, if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person." The statute does not define sexual arousal or sexual gratification.

**{¶22}** However, the statute contemplates "any touching of the statutorily described areas that a reasonable person would perceive as sexually stimulating or gratifying." Thus, proof of actual arousal or gratification is not necessary. *State v. Slusarczyk*, 2024-Ohio-4790, ¶ 66 (8th Dist.), quoting *State v. Edwards*, 2003-Ohio-998, ¶ 24 (8th Dist.), (quoting *State v. Maybury*, 1994 WL 422300 (8th Dist. Aug. 11, 1994). Further, "sexual contact" includes "any nonconsensual physical touching, even through clothing, of the body of another." *State v. Jones*, 2006-Ohio-5249, ¶ 15 (8th Dist.), citing *State v. Ackley*, 2002-Ohio-6002 (C.P.).

**{¶23}** There need not be direct testimony regarding sexual arousal or gratification in order to sustain a conviction for GSI. *State v. Robinson*, 2015-Ohio-4533, ¶ 42 (12th Dist.), citing *State v. Meredith*, 2005-Ohio-062, ¶ 13 (12th Dist.). In *Slusarczyk*, 2024-Ohio-4790, ¶ 66, the Eighth District Court of Appeals relied upon considerations outlined by the Twelfth District when determining the existence of sexual arousal or gratification under the statute:

Whether the touching or contact was performed for the purpose of sexual arousal or gratification is a question of fact to be inferred from the type, nature, and circumstances of the contact. [*State v. Meredith*, 12th Dist. Warren No. CA2004-06-062, 2005-Ohio-2664, ¶ 13], citing [*In re Anderson*, 116 Ohio.App.3d 441, 443, 688 N.E.2d 545 (12th Dist.1996)], and *State v. Mundy*, 99 Ohio App.3d 275, 289, 650 N.E.2d 502 [(2d Dist.1994)]. In determining the defendant's purpose, the trier of fact may infer what the defendant's motivation was in making physical contact with the victim. *Meredith*, citing *Mundy* and [*State v. Cobb*, 81 Ohio App.3d 179, 185, 610 N.E.2d 1009 (9th Dist.1991)]. 'If the trier of fact determines that the defendant was motivated by desires of sexual arousal or gratification, and that the contact occurred, then the trier of fact may conclude that the object of the defendant's motivation was achieved.' *Cobb* [at 185]. *(*quoting *In re A.L.*, 2006-Ohio-4329, ¶ 20 (12th Dist.)).

**{¶24}** Appellant cites to M.R.'s direct testimony, which stated the following:

Q: Okay. Did he ever penetrate you?

A: No.

Q: Did he ever have you perform any kind of sexual acts on him?

A: No.

Q: And did he perform any kind of acts on you other than the dry humping that you talked about?

A: No.

(Trial Tr. 332).

**{¶25}** Appellant asserts that M.R. did not describe "dry humping" except to further state:

Q: What would he do when you cuddled?

A:     You know, we would be laying on the couch.

. . .

I remember times where there was like dry humping or he was getting some sort of enjoyment just from, you know, I guess me trying to just cuddle up and watch a movie.

(Trial Tr. 322).

**{¶26}** Appellant also asserts that there was no testimony or evidence to establish that he was sexually aroused or gratified.

**{¶27}** Viewing M.R.'s testimony in a light most favorable to the State, a rational trier of fact could have reasonably inferred that Appellant derived sexual motivation or gratification by touching M.R. between her legs.  Further, M.R. provided testimony in addition to that cited by Appellant that suffices for an inference of sexual arousal or gratification.

**{¶28}** At trial, M.R. was 36 years old.  (Trial Tr. 316).  She testified that she was 8 to 18 years old during Appellant's marriage to her mother.  (Trial Tr. 317).  She stated that Appellant and her mother married quickly because her mother was pregnant and she did not know Appellant well when he moved in.  (Trial Tr. 318).  She recalled that she was not close to her biological father and Appellant became a father figure to her and her sister, H.R.  (Trial Tr. at 319).

**{¶29}** M.R. explained that her mother worked nights and Appellant would care for her and her siblings.  (Trial Tr. 320).  She related that from ages 8 through 11, Appellant would cuddle and play-wrestle with her and sometimes it became "quite uncomfortable." (Trial Tr. 321-322).

**{¶30}** M.R. testified that Appellant would "open-mouth" kiss and "dry hump" her in a way that he was "getting some sort of enjoyment just from, you know, I guess me trying to just cuddle up and watch a movie."  (Trial Tr. 322).  She stated that it was "more than occasional and it was uncomfortable."  (Trial Tr. 326).  She testified that Appellant rubbed up mostly against her backside.  (Trial Tr. 326).  She remembered that the "dry humping" occurred when she was laying on top of him and they would watch movies.  (Trial Tr.

323).  M.R. further testified that Appellant would tickle her between her legs over her vaginal area "[a]nd it would be very rough, roughhouse sometimes."  (Trial Tr. 322-323).

**{¶31}**  When asked if Appellant put his hand in her pants, M.R. testified, "No, just, you know, through the pants with the tickling and stuff, I do remember things like that; but, no."  (Trial Tr. 323).  The prosecution asked:  "Q:  Okay.  So when he would tickle you, you said he would touch you over the pants in your vaginal area?"  (Trial Tr. 323).  M.R. responded, "Yes," and further testified:  "More, you know, when we were younger, I think, because it did become very rough at times.  It wasn't - - it wasn't fun, it wasn't enjoyable anymore."  (Trial Tr. 323).  M.R. further testified that at the time, she did not realize it was inappropriate behavior and it was not until she attended years of therapy that she realized that Appellant was grooming her.  (Trial Tr. 325).

**{¶32}**  This testimony constitutes sufficient evidence that Appellant committed GSI as to M.R.  While Appellant did not touch M.R. under her clothes, M.R. testified that Appellant did touch her vaginal area over her clothes and it became rough at times.  She further testified that as she lay on top of him watching movies, he rubbed up mainly against her backside and got some kind of enjoyment out of it.

**{¶33}**  In addition, we find that the conviction is not against the manifest weight of the evidence.  The jury chose to believe M.R.'s testimony that Appellant touched her vaginal area, rubbed against her backside, got some kind of pleasure from it, and sometimes did it roughly.  The jury could freely choose to discredit Appellant's testimony that he was a "touchy-feely" person and often play-wrestled, tickled, and cuddled on the couch with M.R., H.R., and I.H.  (Trial Tr. 417-418).  He denied touching any of the girls inappropriately and testified that I.H. made up the allegations because she wanted to be on her own.  (Trial Tr. 448).  Simply because the jury believed M.R. and the State's version of events over that of Appellant does not establish that the conviction was against the manifest weight.  *Slusarczyk,* 2024-Ohio-4790, ¶ 70.

**{¶34}**  Accordingly, Appellant's first assignment of error lacks merit and is overruled.

**{¶35}**  In his second assignment of error, Appellant asserts:

**THE TRIAL COURT'S SENTENCE OF THE DEFENDANT WAS CONTRARY TO LAW, FAILING TO TAKE INTO CONSIDERATION THE GUIDELINES SET FORTH IN O.R.C. 2929.11, ET SEQ.**

**{¶36}** Appellant quotes the sentencing statute and the trial court's statement at sentencing that, "[t]he victims, two of them did speak, and I heard their comments and the sentence that I did pronounce was based on those factors." (Sent. Tr.).

**{¶37}** The following constitutes the entirety of Appellant's argument under this assignment of error:

> The Defendant in this case was 56 years old at the time of sentencing. He is first eligible for parole when he is 101 years old. Certainly, a prison term less than 44.5 years to life is warranted in this case. The effect of this sentence is life without parole. Additionally, the Court failed to take into consideration the Defendant's military service pursuant to O.R.C. 2929.12(F).

(Appellant's Br. 7-8).

**{¶38}** It appears from his limited argument that Appellant challenges both the court's sentence under R.C. 2929.11 and the imposition of consecutive sentences under R.C. 2929.14. In the Conclusion portion of his Brief, Appellant requests that this Court reduce his sentences and order the sentences to run concurrently because the trial court failed to comply with R.C. 2929.11(A). Thus, we address both statutes.

**{¶39}** "[A]n appellate court may vacate or modify a felony sentence on appeal only if it determines by clear and convincing evidence that the record does not support the trial court's findings under relevant statutes or that the sentence is otherwise contrary to law." *State v. Marcum*, 2016-Ohio-1002, ¶ 1. A sentence is clearly and convincingly contrary to law in the following circumstances: (1) if it falls outside of the statutory range for the particular degree of offense; (2) if the trial court fails to properly consider the purposes and principles of felony sentencing under R.C. 2929.11 and the seriousness and recidivism factors in R.C. 2929.12; or (3) if the trial court orders consecutive sentences and does not make the necessary consecutive sentence findings. *State v. Chappell*,

2024-Ohio-1541, ¶ 36 (7th Dist.), citing *State v. Pendland*, 2021-Ohio-1313, ¶ 41 (7th Dist.).

**{¶40}** In *State v. Jones*, 2020-Ohio-6729, the Ohio Supreme Court modified an appellate court's review of felony sentences.  The Court reviewed the appellate standard of review for felony sentences announced in *Marcum* and clarified that "[n]othing in R.C. 2953.08(G)(2) permits an appellate court to independently weigh the evidence in the record and substitute its judgment for that of the trial court concerning the sentence that best reflects compliance with R.C. 2929.11 and 2929.12."  *Id.* at ¶ 42.

**{¶41}** Appellant does not assert that the sentences were outside of the statutory ranges.  Rather, he asserts that the trial court made no required findings under R.C. 2929.11 or R.C. 2929.14(C)(4).

**{¶42}** R.C. 2929.11 outlines the overriding purposes of felony sentencing. R.C. 2929.11(A) provides that the overriding purposes of felony sentencing are to:

> protect the public from future crime by the offender and others, to punish the offender, and to promote the effective rehabilitation of the offender using the minimum sanctions that the court determines accomplish those purposes without imposing an unnecessary burden on state or local government resources.

**{¶43}** The statute further provides that a court accomplishes these purposes by considering "the need for incapacitating the offender, deterring the offender and others from future crime, rehabilitating the offender, and making restitution to the victim of the offense, the public, or both."  R.C. 2929.11(A).  The court must also impose a felony sentence that is "reasonably calculated" to accomplish the purposes prescribed in R.C. 2929.11(A) and to do so in a manner that is "commensurate with and not demeaning to the seriousness of the offender's conduct and its impact on the victim, and consistent with sentencings imposed for similar crimes committed by similar offenders."  R.C. 2929.11(B).

**{¶44}** R.C. 2929.12(B) and (C) outline factors that a court must consider in determining whether the offender's conduct is more serious or less serious than conduct that normally constitutes the offense. R.C. 2929.12(D) and (E) require the trial court to consider specified factors to determine whether the offender is likely to reoffend. These

Case No. 24 MA 0068

factors include whether at the time of the committed offense, the offender was under community control and whether the offender was previously adjudicated a delinquent child. R.C. 2929.12(D)(1).

{¶45} As to consecutive sentences, R.C. 2929.14(C)(4) provides that:

(4) If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:

(a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.

(b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

{¶46} The trial court addressed R.C. 2929.11, 2929.12 and 2929.14 at the May 9, 2024 sentencing hearing and in its June 26, 2024 judgment entry. At the hearing, the court specifically cited R.C. 2929.11, 2929.12, and 2929.13 and explained that its sentence was in accordance with those statutes. (Sent. Tr. 5/9/24 at 28). The court explained that those statutes addressed the purposes and principles of sentencing, which included protecting the public from future crime by Appellant and punishing him by using

Case No. 24 MA 0068

the minimum sanctions that would accomplish those purposes without undue burden on state resources. (Sent. Tr. 5/9/24 at 28). The court further indicated that it had considered the need for incarcerating Appellant, deterring Appellant, rehabilitating him, and providing for restitution. (Sent. Tr. 5/9/24 at 28). The court also noted that the sentence was not based on impermissible purposes and was consistent with other sentences and was proportional to the harm caused to the victims. (Sent. Tr. 5/9/24 at 28-29).

**{¶47}** The court further found at the hearing that it considered the seriousness and recidivism factors under R.C. 2929.12 and the degree of the felonies under R.C. 2929.13. (Sent. Tr. 5/9/24 at 29). The court held that weighing the purposes and principles, Appellant was not amenable to community control and not imposing a prison sentence would demean the seriousness of his conduct and actions on the community and the harm caused to the victims. (Sent. Tr. at 29). The court also reasoned at the hearing that it had heard the testimony of the victims, considered their young ages at the times of the incidents, and weighed the impact that it had on them. (Sent. Tr. 5/9/24 at 26-27). These findings satisfy R.C. 2929.11.

**{¶48}** The court also explained at the sentencing hearing that it imposed consecutive sentences because they were necessary to protect the public from Appellant's future crimes and to punish him. (Sent. Tr. 5/9/24 at 33). The court further found that consecutive sentences were not disproportionate to the seriousness of Appellant's conduct and to the danger he posed to the public. (Sent. Tr. 5/9/24 at 33). The court additionally found that Appellant's offenses were part of a course of conduct that no single prison term imposed for any of the committed offenses in that pattern of conduct would adequately reflect the seriousness of Appellant's conduct. (Sent. Tr. 5/9/24 at 34).

**{¶49}** At the July 8, 2024 sentencing hearing as to the pandering obscenity convictions, the court also reviewed the R.C. 2929.11, 2929.12, 2929.13 and 2929.14 factors in imposing the agreed-upon sentence for those convictions. (Sent. Tr. 7/8/24 at 13-14).

**{¶50}** In addition, the court cited to R.C. 2929.11, 2929.12, 2929.13, and 2929.14 in its June 26, 2024 sentencing entry. The court indicated that it considered the factors under each statute, and balanced the factors as required under R.C. 2929.12. The court

held that Appellant was not amenable to community control and prison was the only sanction that was consistent with the statutes for sentencing. The court also explained that it was imposing consecutive sentences because of the need to protect the public from the commission of future crimes by Appellant and punishing Appellant. The court additionally held that consecutive sentences were not disproportionate to the seriousness of Appellant's conduct and to the danger he posed to the public. Finally, the court explained that imposing maximum sentences as to some of the counts was necessary because he committed the worst form of the crime, it was necessary to protect the public from commission of crimes by Appellant in the future.

{¶51} These findings establish that the trial court considered the felony sentencing statutes and considered the relevant statute in imposing consecutive sentences.

{¶52} Accordingly, Appellant's second assignment of error lacks merit and is overruled.

{¶53} For the above reasons, both of Appellant's assignments of error lack merit and we affirm the trial court's judgment.

Waite, J., concurs.

Robb, P.J., concurs.

Case No. 24 MA 0068

―――――――――――

For the reasons stated in the Opinion rendered herein, the assignments of error are overruled and it is the final judgment and order of this Court that the judgment of the Court of Common Pleas of Mahoning County, Ohio, is affirmed. Costs to be waived.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

## NOTICE TO COUNSEL

**This document constitutes a final judgment entry.**