[Cite as *State v. Barnhart*, 2010-Ohio-3282.]

STATE OF OHIO, JEFFERSON COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | ) | CASE NO. 09 JE 15 |
| | ) | |
| PLAINTIFF-APPELLEE | ) | |
| | ) | |
| VS. | ) | OPINION |
| | ) | |
| RANDY G. BARNHART | ) | |
| | ) | |
| DEFENDANT-APPELLANT | ) | |

CHARACTER OF PROCEEDINGS:      Criminal Appeal from the Court of
                               Common Pleas of Jefferson County,
                               Ohio
                               Case No. 08 CR 131

JUDGMENT:                      Affirmed.

APPEARANCES:

For Plaintiff-Appellee:        Atty. Thomas R. Straus
                               Prosecuting Attorney
                               Jefferson County Justice Center
                               16001 State Route 7
                               Steubenville, Ohio 43952

For Defendant-Appellant:       Atty. Kristopher M. Haught
                               Scarpone & Associates
                               2021 Sunset Boulevard
                               Steubenville, Ohio 43952

JUDGES:

Hon. Cheryl L. Waite
Hon. Joseph J. Vukovich
Hon. Mary DeGenaro

                               Dated: June 30, 2010

WAITE, J.

{¶1} Appellant Randy Gene Barnhart appeals his convictions in the Jefferson County Court of Common Pleas on four counts of rape of a minor under 13 years old and one count of illegal use of a minor in nudity oriented material. The victim of all five crimes was his daughter M.B. Appellant is challenging the sufficiency and manifest weight of the evidence, and also argues that the court should not have admitted the testimony of his step-daughter, A.W., who was called to the stand to refute statements Appellant made in a taped confession regarding whether he could obtain an erection. No reversible error is evident in this case. Appellant confessed to the police that he had at least five sexual encounters with his daughter, including digital vaginal penetration, cunnilingus, and penis to vagina contact. M.B. also testified to more than four specific and separate instances of sexual relations Appellant had with her. Since Appellant was convicted of only four counts of rape, and because the evidence indicates that at least that many instances of rape occurred, the record fully supports the jury's verdict. Regarding whether there was error in admitting the testimony of A.W., it is clear that her testimony was relevant to prove that some type of penetration took place when Appellant raped M.B. Although there is some discrepancy in the record as to when the rapes first started, A.W.'s testimony is within the general time frame of the rape charges and clearly rebuts parts of Appellant's version of events. The testimony was relevant and there was no abuse of discretion in the trial court's decision to allow the relevant testimony to be admitted. Appellant's arguments are not persuasive, and the judgment of the trial court is affirmed.

Background and Procedural History

{¶2}   Appellant was indicted on October 1, 2008, on four counts of rape of a child less than 13-years old, R.C. 2907.02(A)(1)(b), and one count of illegal use of minor in nudity-oriented material, R.C. 2907.323(A)(2).  The victim of the crimes was Appellant's minor daughter, M.B., who was between eleven and twelve years old at the time the crimes were committed.  The acts of rape occurred in March, April, and May of 2007 and August of 2008.  The remaining charge was based on nude photographs that Appellant took of M.B. at or near the time of one of the acts of rape in April, 2007.  Counsel was appointed to represent Appellant against the charges.

{¶3}   On April 10, 2009, counsel filed a motion in limine to exclude the testimony of A.W., T.W. and B.W., three stepdaughters of Appellant who had allegedly been sexually molested by him in a manner similar to the rape of M.B.  On April 13, 2009, the court provisionally sustained the motion in limine subject to the development of testimony at trial.

{¶4}   Jury trial began on April 14, 2009.  M.B. testified about more than 20 sexual encounters with Appellant.  She testified that Appellant gave her a magazine called "Family Love," with particular stories highlighted dealing with fathers having sex with their daughters.  The stories included:  "Do Me Daddy"; "Father's Cock of Gold"; and "Pop in my Ass".  (Tr., pp. 109-112.)  She testified that after she moved with Appellant to his home at 503 Railroad Avenue in Steubenville, Appellant would tell her where they were going to have sex in the house.  She explained that Appellant had sex with her while teaching her how to play strip poker.  Appellant

ended up taking off all his clothes during the game, and afterward, he took M.B. to the living room and inserted his penis at least part of the way into her vagina. (Tr., p. 102.) She also recounted an incident where Appellant placed a condom on his finger and inserted it into her vagina. (Tr., p. 95.) She further testified about a rape that involved the use of a camera. She held the camera while Appellant was on top of her having sex, and she testified that his penis was partially inside her during that rape. (Tr., p. 103.) She also testified that the last sexual encounter happened around August 20, 2008, approximately a week before she met with Steubenville Detective Erik Dervis. She testified that Appellant had again inserted his penis into her vagina at that time. (Tr., pp. 108-109.) She testified that Appellant took nine photographs of her in the nude and that he kept these photographs in his bedroom. (Tr., p. 106.) She identified a fragment of a photograph found in Appellant's bedroom as a photograph of her bare legs. (Tr., p. 107.)

{¶5} Steubenville Detective Jean-Philippe Rigaud testified that he searched Appellant's home at 503 Railroad Avenue and found the magazine called "Family Love." The magazine had a number of sections highlighted that discussed a father having sex with his daughter.

{¶6} Steubenville Detective Erik Dervis testified that he participated in a taped interview of Appellant on August 15, 2008, and during that interview Appellant confessed to various instances of rape involving M.B. Appellant moved into the house at 503 Railroad Avenue in February, 2006. (Tr., p. 163.) After he moved there, he began taking nude photographs of M.B. after they played strip poker. (Tr.,

p. 169.) Appellant knew it was a bad idea to take the photographs, and he admitted taking eight or nine photos. (Tr., p. 170.) He admitted placing a condom on his finger and inserting it into M.B.'s vagina. (Tr., p. 170.) He stated that he was impotent and asked M.B. to help him get an erection. (Tr., p. 170.) He admitted to licking his daughter's vagina on four or five separate occasions. (Tr., p. 170.)

{¶7} The state introduced into evidence the audio tape of the interview Appellant gave to Detective Dervis. The tape was played for the jury to hear. During the early part of the interview, Appellant denied having any type of sexual contact with M.B. (Tr., p. 204.) As the interview progressed, Appellant admitted to touching, rubbing and massaging M.B.'s vagina and anus. (Tr., pp. 204, 207.) He stated that the sexual encounters with M.B. started when he moved to Railroad Avenue in Steubenville. (Tr., p. 208.) He stated that he moved to Railroad Avenue in February of 2006. (Tr., p. 226.) He stated that he probably began his sexual encounters with M.B. in January or February, 2007. (Tr., p. 238.) He admitted to placing a condom on his finger and inserting the finger in M.B.'s vagina. (Tr., pp. 207, 216, 221.) He admitted he had some type of sexual encounter with M.B. "five or six times". (Tr., p. 240.) He admitted performing cunnilingus on M.B. between one and five times. (Tr., p. 215.)

{¶8} He admitted that he attempted to have vaginal intercourse with M.B. in April of 2007, and he licked her vagina at that same time. (Tr., p. 244.) He admitted that he performed oral sex on M.B. in August, 2008, just a week before his police interview took place. (Tr., p. 239.) He stated that M.B. did not like it when he

performed cunnilingus, and that he persisted in performing it to see if she would eventually start to enjoy it.  (Tr., p. 239.)

{¶9}  He stated that he never penetrated M.B. with his penis because he could not achieve an erection.  (Tr., p. 235.)  He related his inability to sustain an erection to a condition called Bell's Palsy.  He stated that he was given steroids to cure the condition.  (Tr., p. 235.)  He stated that he took steroids for six months and he could no longer become aroused after he started taking the steroids.  (Tr., p. 235.) He stated that he started "messing" with M.B. because he thought it could help his problem.  (Tr., p. 206.)

{¶10}  Appellant stated that he taught M.B. how to play strip poker, and that he took nude photographs of her while they were playing.  (Tr., p. 210.)  He stated that he took four or five Polaroid instamatic photographs of M.B.  (Tr., pp. 188-189.)  Two of the nude photographs were taken in March, 2007, and Appellant would use them to become sexually aroused.  (Tr., p. 243.)  He stated that he knew it was wrong to take the photographs of M.B.  (Tr., p. 186.)  He stated that he destroyed the photographs two to five months before his interview with the police in August of 2008. (Tr., pp. 186, 188.)  A Polaroid camera and various nude photographs were introduced into evidence, although only a sliver of a photograph of M.B. was found and was admitted at trial.  (State's Exh. 4.)  Some of the nude photographs were pictures of M.B.'s mother, Patricia Barnhart.

{¶11} Appellant admitted that he may have given M.B. the magazine "Family Love" about a father having sex with his daughter. (Tr., p. 224.) He remembered highlighting sections of the magazine for M.B. to read. (Tr., p. 227.)

{¶12} Toward the end of the interview, Detective Anderson asked Appellant: "[D]o you think you have problems with pornography and sex?" Appellant replied: "No, sir, I swear I don't." (Tr., p. 233.)

{¶13} Dr. Stephen Mascio was called as an expert witness for the state. He testified that he performed a physical examination of M.B. shortly after her last sexual encounter with Appellant in August of 2008. (Tr., p. 247.) He found a tear in the vagina that was indicative of penetration and that was common to cases of rape and molestation. (Tr., p. 275.)

{¶14} A.W., one of Appellant's stepdaughters, was called by the prosecution to testify to refute the assertions in Appellant's confession that he was unable to get an erection and could not have committed rape by penile penetration. She testified that she lived with Appellant at 420 Union Avenue in Steubenville. She testified that she moved from Union Avenue to Claysville, Pennsylvania on November 27th, but she could not remember if this was in 2006 or 2007. (Tr., p. 285.) She testified that two days before she moved to Claysville, she saw Appellant's penis and it was hard and in a state of arousal. (Tr., p. 289.) Appellant's counsel objected to this testimony because A.W. could not remember the exact date in question, but the trial court overruled the objection because both November, 2006 and November, 2007 were

within the overall time frame that one or more of the incidences of rape had occurred. (Tr., pp. 286-288.)

{¶15} Linda Eveleth of the Ohio Bureau of Criminal Investigation testified that underwear used by M.B. was submitted to BCI for examination, and that DNA testing was performed on it. Prior testimony had established that the underpants were alleged to have been worn by M.B. immediately after having sexual intercourse with Appellant. (Tr., p. 252.) Lab testing revealed that there was semen found in the underwear sample, that the major source was not from Appellant, and that no conclusions could be drawn as to Appellant being a minor source of the semen that was found. (Tr., pp. 328-329.)

{¶16} B.W., a 12-year old stepdaughter of Appellant, testified that she lived with Appellant and M.B. on Railroad Avenue in Steubenville. (Tr., p. 292.) While she lived there, she was concerned about M.B. because she would come to bed crying every night. (Tr., p. 295.) She also found nude photographs of M.B. and others in the basement of the house inside a briefcase. (Tr., p. 295.)

{¶17} Patricia Barnhart, M.B.'s mother, testified that she and Appellant had been married for 13 years, but had not been living together for the past 5 years. (Tr., p. 123.) She was not living with Appellant at the time of the crimes alleged in this case. She testified that she had nine children. She testified that she had been with Appellant since age 13, and that she had her first child with him at age 16. (Tr., p. 138.) She testified that Appellant lived on 503 Railroad Avenue in Steubenville with her daughter M.B. and four of her other children. (Tr., p. 124.) Prior to that, they had

lived at 420 Union Street. (Tr., p. 126.) She identified M.B.'s birth certificate stating that she and Appellant were her parents. (Tr., p. 129.)

**{¶18}** Mrs. Barnhart testified that M.B. came to her house to take a shower and borrowed a pair of black panties. (Tr., p. 128.) Mrs. Barnhart also testified that she gave Appellant nude photographs of herself.

**{¶19}** The jury rendered its guilty verdict on April 15, 2009. Appellant was found guilty on all five counts in the indictment. The court held a sentencing hearing on April 16, 2009. The court imposed an indeterminate sentence of ten years to life in prison on the four counts of rape, and five years for the conviction for illegal use of a minor in nudity oriented material. The court ordered all sentences to run consecutively. The court filed its sentencing judgment entry on April 16, 2009, and this appeal followed on April 21, 2009.

ASSIGNMENT OF ERROR NO. 1

**{¶20}** "THE TRIAL COURT'S FINDING OF GUILTY WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND WAS NOT SUPPORTED BY SUFFICIENT EVIDENCE."

**{¶21}** Appellant alleges that the state failed to prove that he raped his daughter four times. He contends that there was no proof of penile penetration due to contradictory evidence of the state's witnesses and due to Appellant's own confession in which he stated he could not achieve an erection. He argues that Patricia Barnhart was not a credible witness and gave contradictory testimony regarding the nude pictures of herself that she had given to Appellant. He claims that

the scientific evidence provided by Linda Eveleth from BCI failed to show that any of Appellant's DNA was on M.B.'s underwear that was submitted for analysis. Appellant contends that the questions raised by this evidence create doubt in the jury verdict and establish reversible error.

{¶22} The legal concepts of sufficiency of the evidence and weight of the evidence, although related, are analyzed separately on appellate review. *State v. Thompkins* (1997), 78 Ohio St.3d 380, 678 N.E.2d 541, paragraph two of the syllabus. Sufficiency is a term of art meaning that legal standard which is applied to determine whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law. Sufficiency is a test of adequacy. Whether the evidence is legally sufficient to sustain a verdict is a question of law. *State v. Robinson* (1955), 162 Ohio St. 486, 124 N.E.2d 148. A conviction based on legally insufficient evidence constitutes a denial of due process. *Thompkins,* at 386-387, 678 N.E.2d 541, citing *Tibbs v. Florida* (1982), 457 U.S. 31, 102 S.Ct. 2211, 72 L.Ed.2d 652.

{¶23} To determine whether sufficient evidence exists to support a conviction, the reviewing court must determine "whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus.

{¶24} A verdict that is supported by sufficient evidence may still be against the manifest weight of the evidence. *Thompkins*, supra, at 387, 678 N.E.2d 541.

"Weight of the evidence concerns 'the inclination of the *greater amount of credible evidence*, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the *greater amount of credible evidence* sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its *effect in inducing belief*.' " (Emphasis sic.) Id*.,* quoting Black's Law Dictionary (6th Ed.1990) 1594.

**{¶25}** " 'The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.' " *Thompkins*, supra, at 387, 678 N.E.2d 541, quoting *State v. Martin* (1983), 20 Ohio App.3d 172, 175, 485 N.E.2d 717.

**{¶26}** The crimes at issue in this appeal are rape of a minor under age 13 and illegal use of a minor in nudity oriented materials.

**{¶27}** R.C. 2907.02(A)(1)(b) defines the elements of the crime of rape of a child less than 13 years old:

**{¶28}** "(A)(1)  No person shall engage in sexual conduct with another who is not the spouse of the offender or who is the spouse of the offender but is living separate and apart from the offender, when any of the following applies:

{¶29} "* * *

{¶30} "(b) The other person is less than thirteen years of age, whether or not the offender knows the age of the other person."

{¶31} "Sexual conduct" is defined in R.C. 2907.01(A) as:

{¶32} "(A) 'Sexual conduct' means vaginal intercourse between a male and female; anal intercourse, fellatio, and cunnilingus between persons regardless of sex; and, without privilege to do so, the insertion, however slight, of any part of the body or any instrument, apparatus, or other object into the vaginal or anal opening of another. Penetration, however slight, is sufficient to complete vaginal or anal intercourse."

{¶33} Cunnilingus may be proven without evidence of penetration: "Penetration is not required to commit cunnilingus. Rather, the act of cunnilingus is completed by the placing of one's mouth on the female's genitals." *State v. Lynch*, 98 Ohio St.3d 514, 2003-Ohio-2284, 787 N.E.2d 1185, ¶86.

{¶34} The elements of illegal use of a minor in nudity oriented material, as charged in the instant case, are found in R.C. 2907.323(A)(2):

{¶35} "(A) No person shall do any of the following:

{¶36} "* * *

{¶37} "(2) Consent to the photographing of the person's minor child or ward, or photograph the person's minor child or ward, in a state of nudity or consent to the use of the person's minor child or ward in a state of nudity in any material or performance, or use or transfer a material or performance of that nature, unless the

material or performance is sold, disseminated, displayed, possessed, controlled, brought or caused to be brought into this state, or presented for a bona fide artistic, medical, scientific, educational, religious, governmental, judicial, or other proper purpose, by or to a physician, psychologist, sociologist, scientist, teacher, person pursuing bona fide studies or research, librarian, member of the clergy, prosecutor, judge, or other person having a proper interest in the material or performance[.]"

{¶38} The record contains a wide variety of sources tending to prove Appellant's guilt, including Appellant's recorded confession and the testimony of M.B. The confession and M.B.'s testimony overlapped in many areas. M.B. testified that she had more than 20 sexual encounters with Appellant. She testified that the sex would come to an end when the white stuff came out of Appellant's penis. Appellant specifically instructed her about sex, and told her when they were going to engage in sex. She described the incident where Appellant put a condom on his finger and inserted it into her vagina. She described playing strip poker with Appellant, and when they were naked, Appellant climbed on top of her and put his penis at least partially into her vagina. She described an encounter in which she was told to take photographs while Appellant was having sex with her. She testified that Appellant put his penis partially into her vagina on that occasion. She described the most recent time that Appellant raped her, in August, 2008, that took place in Appellant's bedroom. She again testified that Appellant put his penis into her vagina.

{¶39} Appellant confessed to a variety of rape crimes, mostly involving cunnilingus. Although Appellant did not admit to rape by penile penetration, he did

admit to placing a condom on his finger and putting his finger inside M.B.'s vagina sometime between January and March of 2007. He admitted to engaging in cunnilingus with M.B. in April, 2007. As stated previously, rape in the form of cunnilingus does not require proof of penetration. *Lynch*, supra, 98 Ohio St.3d 514, 2003-Ohio-2284, 787 N.E.2d 1185, ¶86. He admitted to having five or six sexual encounters with M.B., and engaging in cunnilingus with her between one and five times. He admitted teaching her strip poker and sexually caressing her after she had taken her clothes off while they were playing. He admitted highlighting a copy of a magazine for her that dealt with a father having sex with his daughter. He admitted attempting to have vaginal intercourse with M.B. one time, but he denied actually achieving penetration.

{¶40} Appellant argues that M.B. never testified that there was penile penetration, but the record indicates otherwise. She testified that, on three separate occasions, Appellant's penis penetrated her "part way." (Tr., pp. 102-103, 108.)

{¶41} Appellant contends that the weight of the evidence, and the lack of credibility of some of the witnesses, particularly that of Patricia Barnhart, weighs against the verdict. It is true that Patricia Barnhart's testimony had some inconsistencies, and she corrected herself at times during her testimony. Whether all or part of her testimony was credible was a matter for the jury to decide, and we will not second-guess the jury's interpretation of the evidence except in the most egregious cases where it is abundantly clear that the jury has lost its way. The jury in

this case did not appear to lose its way, but simply weighed the somewhat conflicting evidence and believed the evidence that supported a guilty verdict.

**{¶42}** Appellant contends that the BCI results from testing M.B.'s panties proves he did not rape her because he was not found to be the major source of semen in the panties.  Appellant overstates the importance of the panties and the BCI test results in this case.  Appellant himself admitted that he could not have an erection or ejaculate, so one would not expect to find his semen on M.B.'s clothing. Since the evidence supported at least four rape crimes that did not involve penile penetration, i.e., cunnilingus and digital penetration, the questions surrounding Appellant's ability to obtain an erection did not undermine the state's case. Additionally, Patricia Barnhart's testimony was helpful in providing a possible explanation as to why Appellant's DNA was not found to be the major source of semen found in the black panties examined by BCI.  Mrs. Barnhart testified that M.B. borrowed black panties from her, and these could have been the panties examined by BCI.  There would be little reason for Appellant's DNA to be found on Mrs. Barnhart's panties because she had not been living with him for five years.  The jury also could have simply disbelieved that the black panties were worn by M.B. soon after the most recent rape in August of 2008.  The jurors are free to believe some, all or none of the testimony of each witness, and they may separate the credible parts of the testimony from the incredible parts as they wish.  *State v. Mastel* (1971), 26 Ohio St.2d 170, 176, 270 N.E.2d 650.  There is nothing particularly difficult in believing that the state recovered panties that might have been connected to one of the rapes, but

upon further examination, contained no forensic evidence that could clearly associate the panties with a particular act of rape.

**{¶43}** There is also substantial evidence establishing that Appellant took or directed the taking of nude photographs of M.B., some of which depicted the two of them having sexual intercourse or sexual contact. The state submitted into evidence the Polaroid camera that Appellant used to take nude photographs of M.B. (State's Exh. 3.) Appellant himself admitted taking some of the photographs and ordering M.B. to take some of the photographs. M.B. testified about a number of the photographs, and she identified a fragment of a photograph that showed her bare legs. She testified that Appellant took eight or nine photographs of her with no clothes on. Appellant kept these photographs in his bedroom. There was evidence of other pornographic materials in his bedroom, including naked photographs of Patricia Barnhart and other unidentified females. Appellant admitted that he knew that it was wrong to take these photographs, and he eventually destroyed some of them. He also admitted that he wanted the photographs "[s]o, you know, if I looked at the pictures maybe it would -- I could do this." (Tr., p. 243.)

**{¶44}** The evidence supports the jury's verdict regarding all five counts in the indictment, and the jury did not lose its way in convicting Appellant on four counts of rape and one count of illegal use of a minor in nudity oriented material. Appellant's first assignment of error is overruled.

<u>ASSIGNMENT OF ERROR NO. 2</u>

{¶45} "THE TRIAL COURT ERRED IN ALLOWING THE TESTIMONY OF [A.W.] AND [B.W.]"

{¶46} Appellant's brief only discusses his objections to the testimony of A.W., despite the mention of B.W. in his assignment of error. Our analysis will be restricted to the argument as presented in Appellant's brief. Appellant argues that the court should not have allowed A.W. to testify that she had seen Appellant's penis in an aroused state because she could not specify the exact time when she saw this happen. A.W. testified that she moved from Union Avenue in Steubenville to Claysville, Pennsylvania on November 27th of either 2006 or 2007, and that the incident with Appellant occurred two days before she moved. Appellant contends that November of 2006 is outside of the time frame relevant to the crimes that were alleged in this case. The charges in the indictment allege that the rapes occurred on or about March, April, and May, 2007 and August 10, 2008. Although A.W.'s testimony may refer to an incident that occurred a few months before the first alleged rape in March of 2007, it is nevertheless relevant to the facts that the state was required to prove at trial and was admissible as impeachment evidence to rebut a number of assertions in Appellant's confession. Appellant's argument is not persuasive.

{¶47} Appellant's argument appears to be based primarily on his conclusion that A.W.'s testimony was either irrelevant or unfairly prejudicial compared to its probative value. Evid.R. 402 establishes that all relevant evidence is admissible. Relevant evidence, though, must be excluded "if its probative value is substantially

outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury." Evid.R. 403(A). The admission or exclusion of relevant evidence rests within the sound discretion of the trial court. *State v. Haines*, 112 Ohio St.3d 393, 2006-Ohio-6711, 860 N.E.2d 91, ¶50; *State v. Sanders* (2001), 92 Ohio St.3d 245, 259, 750 N.E.2d 90.

{¶48} We note at the outset that the state had no burden of proof with respect to Appellant's ability to sustain an erection. Rape may be proven by evidence of slight penetration, or in the case of cunnilingus, with no penetration at all. Therefore, courts have concluded that "[b]ecause the crime of rape may, according to the statutory definition, be committed even absent the ability to achieve or sustain an erection, whether a defendant is impotent or not is not determinative in convicting him of rape." *State v. Gee*, (July 22, 1993), 3d Dist. No. 12-92-9, *4. The state's case, though, may be made more difficult if there is evidence of impotence or inability to achieve an erection because the jury may have difficulty believing that any penetration could take place under those conditions.

{¶49} In this particular case the state had a substantial reason for establishing that the defendant could actually achieve an erection because Appellant's taped confession denies that it happened. Thus, any evidence that would show that Appellant could achieve an erection would help corroborate other evidence presented by the state, whereas it might not be relevant or necessary in another rape case where the issue of the defendant's ability to engage in penile penetration is uncontested.

{¶50} Appellant contends that A.W.'s testimony has no evidentiary value because she could not recall whether it was in 2006 or 2007 that she saw Appellant achieve an erection. It is clear from the record that either time, November, 2006 or 2007, was relevant and highly probative to the facts of this case. The time period of the crimes in this case, as set forth in the indictment, was March of 2007 to August of 2008. The specific dates alleged in the indictment, though, are not part of the elements of the crime of rape and those dates are not required to be proven by the state. "An indictment is not invalid for failing to state the time of an alleged offense or doing so imperfectly. The State's only responsibility is to present proof of offenses alleged in the indictment, reasonably within the time frame alleged." *State v. Bogan*, 8th Dist. No. 84468, 2005-Ohio-3412, ¶10. "Pursuant to R.C. 2941.05, an indictment generally is sufficient if it contains, in substance, a statement that the accused has committed some public offense therein specified. See, also, R.C. 2945.83(A); Crim.R. 7(B). The General Assembly, in declaring what shall be sufficient in an indictment, provided, among other things, that it shall be sufficient if it can be understood that the offense was committed at some time prior to the time of the filing of the indictment." *State v. Sellards* (1985), 17 Ohio St 3d 169, 170-171, 478 N.E.2d 781.

{¶51} Further, courts have held that the state must be afforded considerable latitude in the construction of criminal charges involving child rape or sexual assault because a child of tender years does not have the temporal memory of an adult and may have difficulty remembering exact dates and times. *State v. Daniel* (1994), 97

Ohio App.3d 548, 556-557, 647 N.E.2d 174; *State v. Barnecut* (1988), 44 Ohio App.3d 149, 151, 542 N.E.2d 353. "[A] certain degree of inexactitude in averring the date of the offense [of rape of minor under 13 years old] is not *per se* impermissible or fatal to the prosecution." *State v. Mundy* (1994), 99 Ohio App.3d 275, 296, 650 N.E.2d 502.

**{¶52}** If the earlier date of November, 2006, is the correct date as to when A.W. saw Appellant in a state of arousal, the trial court could have found this testimony to be relevant to the first count of rape. Appellant's own confession gives a rather broad time frame in which this first rape may have occurred. In Appellant's confession he stated that he moved to Railroad Street in Steubenville in February, 2006. He also stated that he first began to have sexual relations with M.B. sometime after he moved to Railroad Street, but he was not sure of the exact date of when the sexual acts first occurred. Appellant's confession indicated that he could not achieve an erection during the time he was having sexual encounters with M.B. At times he said his first sexual encounter might have been January of 2007. At other times he thought it might be later, in February or March of 2007. M.B. did not testify as to the exact date of the first rape, but she recalled that all the rapes occurred while she was living with Appellant at the house on Railroad Street. M.B.'s mother, Patricia Barnhart, did not specify the exact date that M.B. began living with Appellant on Railroad Street, other than to say that it was in 2006. (Tr., pp. 124-125.) Therefore, the evidence at trial indicates that the first rape could have occurred as early as sometime in 2006, or as late as March, 2007.

**{¶53}** In this case, the indictment indicated that the first rape occurred on or about March of 2007. That the rape may have occurred in late 2006 or early 2007 and could still be considered to have occurred "on or about" March, 2007. Therefore, A.W.'s testimony regarding Appellant's ability to become sexually aroused in November of 2006 would be directly relevant to the general time period of the alleged rapes.

**{¶54}** Appellant also argues that the state provided no scientific or expert evidence that he was able to achieve an erection, but the state was not required to prove anything specific in this regard and it is unclear how expert testimony would have helped the state's case. Appellant did not provide expert evidence as to his alleged inability to achieve an erection, because there was no need for rebuttal expert testimony on that point. Whether or not a man is in a state of arousal is certainly something that could be observed by a lay witness.

**{¶55}** A.W.'s testimony had substantial probative value and it was within the trial court's discretion to admit it under Evid.R. 403. Therefore, Appellant's second assignment of error is overruled.

<u>Conclusion</u>

**{¶56}** Neither of Appellant's assignments of error have merit. There is substantial evidence supporting at least four rape convictions and one count of illegal use of a minor in nudity oriented material. Appellant himself confessed to at least four instances of rape, and the victim, M.B., also testified to at least four separate and distinct instances of rape. Appellant also testified that he either took or ordered M.B.

to take nude photographs of her, and he testified that he knew it was wrong to take the photos. This testimony was corroborated by the testimony of M.B. and B.W., and was further confirmed by other physical evidence introduced at trial. Although no complete nude photograph of M.B. was introduced at trial, the combined evidence fully supports that the photographs did exist at some point on or about April of 2007 as stated in the indictment. Finally, there was no error in admitting the testimony of A.W. that she saw Appellant in a state of arousal at or near the time of the alleged rapes. The testimony was offered to rebut claims made by Appellant in his confession that he was incapable of having an erection, and by implication, incapable of committing rape by any type of penile penetration. The admission or exclusion of relevant evidence is within the discretion of the trial court, and no abuse of discretion is indicated in this case. Both of Appellant's assignment of errors are overruled and the judgment of the trial court is affirmed.

Vukovich, P.J., concurs.

DeGenaro, J., concurs.