[Cite as *State v. Brown*, 2013-Ohio-5528.]

STATE OF OHIO, MAHONING COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | ) | CASE NO. 11 MA 117 |
| | ) | |
| PLAINTIFF-APPELLEE | ) | |
| | ) | |
| VS. | ) | OPINION |
| | ) | |
| MILIOUS BROWN | ) | |
| | ) | |
| DEFENDANT-APPELLANT | ) | |

CHARACTER OF PROCEEDINGS:   Criminal Appeal from the Court of
Common Pleas of Mahoning County,
Ohio
Case No. 09 CR 557

JUDGMENT:   Affirmed.

APPEARANCES:

For Plaintiff-Appellee:   Atty. Paul J. Gains
Mahoning County Prosecutor
Atty. Ralph M. Rivera
Assistant Prosecuting Attorney
21 West Boardman Street, 6th Floor
Youngstown, Ohio  44503

For Defendant-Appellant:   Atty. Megan Graff
Comstock, Springer & Wilson Co., L.P.A.
100 Federal Plaza East
Suite 926
Youngstown, Ohio  44503

JUDGES:

Hon. Cheryl L. Waite
Hon. Joseph J. Vukovich
Hon. Mary DeGenaro

Dated:  December 13, 2013

WAITE, J.

{¶1} Appellant Milious Brown appeals his conviction in the Mahoning County Common Pleas Court on two counts of gross sexual imposition. On appeal, Appellant contends that his convictions were not supported by sufficient evidence and against the manifest weight of the evidence. Appellant argues that the testimony of his child victims was insufficient to establish the alleged offenses and motivated by the father of one of the victims who was seeking custody of the child. Appellant also contends that the trial court should have granted his motion for mistrial. Appellant's three assignments of error are without merit and are overruled. The judgment of the trial court is affirmed.

## Factual and Procedural History

{¶2} On March 6, 2009, 14 year old M.T. was giving Child X and Child Y a bath. While she was bathing the girls, one of whom is her younger sister, she asked them if Appellant had ever touched either of them under their clothes. The older of the two girls, Child X, who was five years old at the time, told M.T. that Appellant had touched her genitals. Child X also told her sister that Appellant had touched Child Y, her half-sister, who was four at the time, in the same way. Although the trial court did not allow M.T. to testify on the subject at trial, Appellant suggests that M.T.'s question was not prompted by anything the children said or did, but was prompted by some other reason.

{¶3} That same night M.T. called her father, Marco T. "("Marco"), asked him to come home immediately, and explained what Child X and Child Y had told her. While M.T. was speaking to her father, his then-girlfriend, Tami Kushnir, supervised

the girls who were finishing their bath. The children told Kushnir that if she would "pinky promise" that she would not tell anyone else, then they would tell her their secret. (Tr. Vol. II, p. 276.) The children described to Kushnir multiple forms of sexual abuse involving various sex acts performed by Appellant on each child in their mother's home, at night, while the rest of the family slept. According to Ms. Kushnir: Child Y told her that Appellant "would kiss, tickle, and lick * * * her chest area" and "do the same thing to her bad word[vaginal area], and she pointed to her private area" that he would manipulate himself, and lick inside her anus. (Tr. Vol. II, pp. 275, 276.) Child X separately described the same actions, that Appellant would "kiss and tickle and lick" her breasts and her "bad word." (Tr. Vol. II, p. 276.)

{¶4} Marco reported the allegations that same night and was instructed by the sheriff's department to come in the following morning. Ms. Kushnir, M.T., and Marco accompanied Child X and Child Y to the police department the next morning and gave statements. Mahoning County Children Services Agency was contacted and the family was referred to the emergency room and to the Child Advocacy Center. Both Child X and Child Y were taken to the emergency room by the family, and the matter was referred to Child and Family Services. As a result of the investigation, custody of Child X was transferred to Marco.

{¶5} Melissa Bennet, a Department of Child and Family Services investigator, was assigned the case on March 9, 2009 and immediately contacted the girls' mother to identify herself and schedule a date when she could meet with the mother, Child Y, and Child Y's siblings who were living in the house in Campbell. The investigator went to the house that evening and met with the mother, Child Y,

and her three siblings (not including Child X, who remained with her father). The investigator interviewed Child Y alone, in a room in the house, but separate from her mother and siblings. The investigator described Child Y, who was then four years old, as "very matter of fact, very blunt about it. I don't think she understood the -- the importance or the magnitude of what she was saying." (Tr. Vol. II, p. 327.) Child Y told the investigator that Appellant "kisses her, and she pointed to her vaginal area. She said that [Child X] saw and that she loves [Appellant]." (Tr. Vol. II, p. 326.)

{¶6} A few days later, on March 12th or 13th 2009, the investigator conducted separate, videotaped, forensic interviews of Child Y and Child X. Child Y's interview was played for the jury at trial. Apart from any examination that took place in the emergency room on March 7th 2009, Child Y did not undergo an examination or treatment because her mother would not agree to it. The investigator found Child Y credible and the words she used developmentally appropriate. (Tr. Vol. II, pp. 358-359.) When Child X was taken by her father, sister, and Ms. Kushnir to her forensic interview, Dr. Paul McPherson conducted a physical exam. At trial, Dr. McPherson explained the evaluation process and gave his medical conclusion that the results of his examination of Child X were consistent with sexual abuse. (Tr. Vol. III, p. 396.) As a result of the diagnosis, Child X was referred to Amy Chichak, a family counselor with Child and Family Services.

{¶7} Ms. Chichak began treatment of Child X for sexual abuse on March 30, 2009. (Tr. Vol. II, p. 298.) During her ongoing treatment with Ms. Chichak, Child X described to the counselor the same types of interactions with Appellant that she described to Ms. Kushnir and her sister. Over the first months of treatment,

according to Ms. Chichak, she also described Appellant touching her "boobies, her vagina and her butt," that he "would rub his balls up against her, that he would make her suck his penis, that stuff had come out and it tasted gross, that she had told her mom and her vagina would hurt and it would get red and mom would put medication on it." (Tr. Vol. II, p. 300.) The counselor explained that Child X did not disclose every type of abuse that occurred during her initial appointment or during each session and that her disclosures and discussions of the incidents were consistent with a developing child remembering various things that had happened to her as she learned how to interact with the counselor. (Tr. Vol. II, pp. 307-318.) In the counselor's professional opinion, Child X was credible, and her behavior in counseling did not suggest that she was being coached or fed things to say. (Tr. Vol. II, pp. 302, 318.)

**{¶8}** Appellant was indicted on May 28, 2009. The indictment included three counts, one count of gross sexual imposition with regard to Child X (count one), one count of gross sexual imposition with regard to Child Y (count two), and one count of rape with regard to a third child. This appeal deals only with the two counts of gross sexual imposition, which were tried together.

**{¶9}** Child Y did not testify at trial. Child X's testimony at trial was consistent with her prior statements to the various adults who evaluated her. She described Appellant waking her up at night and either staying with her in her room or taking her into the living room while her mother was sleeping. After removing their clothing, Appellant would touch her breasts/chest area with his hands and her vaginal and anal areas with his genitals. Child X said she witnessed Appellant doing the same

things to her sister, Child Y.  (Tr. Vol. II, pp. 224-236.)  The jury returned guilty verdicts on both gross sexual imposition charges

{¶10} Appellant's sentencing was originally set for May 9, 2011, but was rescheduled for June on Appellant's motion.  Appellant's trial counsel withdrew at the June hearing, and a third date was scheduled in July.  The trial court denied a pre-hearing motion for continuance seeking a presentencing investigation, and sentenced Appellant at the scheduled July 11, 2011 hearing to five years on each count, to be served consecutively.  Appellant filed a timely appeal of his sentence.

### Argument and Law

### Assignment of Error No. 1

The State of Ohio failed to introduce sufficient evidence to prove beyond a reasonable doubt that defendant-appellant, Milious Brown, committed gross sexual imposition.

### Assignment of Error No. 2

The jury verdict finding Mr. Brown guilty of two counts of gross sexual imposition is against the manifest weight of the evidence.

{¶11} Although Appellant's first and second assignments of error present different legal bases for reversing a conviction, Appellant's argument under both assignments is identical:  the convictions should be reversed because Child X's father sought custody of Child X and allegedly he and his girlfriend, who were present during all interviews with Child X, were the primary source of the information

provided to medical witnesses and investigators. Because Appellant presents the same argument in both assignments they will be considered together.

**{¶12}** To discharge its burden when prosecuting a criminal offense, "probative evidence must be offered" by the state on "every material element which is necessary to constitute the crime." *State v. Martin*, 164 Ohio St. 54, 57 (1955). Our review of the jury's verdict is limited to whether there was evidence presented, which, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St.3d 259, 273 (1991). "The verdict will not be disturbed unless the appellate court finds that reasonable minds could not reach the conclusion reached by the trier of facts." *Id.* "It must be kept in mind by the appellate court that the jury heard all of the evidence and was instructed as to the law and as a result found the accused guilty beyond a reasonable doubt * * * the relevant inquiry does not involve how the appellate court might interpret the evidence" *Id.* When determining the sufficiency of the evidence presented, "the inquiry is, after viewing the evidence in the light most favorable to the prosecution, whether any reasonable trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id.* citing *Jackson v. Virginia*, 443 U.S. 307, 61 L.Ed.2d 560 (1979).

**{¶13}** When determining whether a criminal judgment is against the manifest weight of the evidence, we act as a "thirteenth juror" to determine whether "the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997), citing *State v. Martin*, 20 Ohio App.3d 172,

175, 485 N.E.2d 717 (1983). The verdict is not against the weight of the evidence when there is evidence in the record which, if believed, will convince the average person of the accused's guilt beyond a reasonable doubt. *State v. Eley*, 56 Ohio St.2d 169, 172, 383 N.E.2d 132 (1978).

> A verdict that is supported by sufficient evidence may still be against the manifest weight of the evidence. "Weight of the evidence concerns 'the inclination of the *greater amount of credible evidence*, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the *greater amount of credible evidence* sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its *effect in inducing belief*.' " (Emphasis sic.) (Internal citations omitted.)

*State v. Barnhart*, 7th Dist. No. 09 JE 15, 2010-Ohio-3282, ¶24, quoting *Thompkins*, *supra*, at 387. The weight to be given the evidence and the credibility of the witnesses are primarily for the trier of fact to determine. *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph one of the syllabus.

{¶14} Appellant's arguments in support of his first and second assignments of error do not address the sufficiency or weight of the evidence actually presented at trial, but instead seek to undermine the quality of the underlying investigation. Our role on appeal, however is to address the evidence presented at trial. In this matter,

the jury heard testimony from Child X, her older sister, Child X's father Marco, his former girlfriend, the Child and Family Services Investigator, Child X's counselor and the examining physician. Each witness was able to separately discuss both what they heard from the children, the father, and the sister, as well as what they themselves had observed. Most importantly, Child X testified specifically as to the conduct that satisfied each element of the offense and was subjected to cross-examination on those issues. Appellant had every opportunity to advance his theory that Child X's father created and manipulated the situation to further his goal of obtaining custody of Child X, and the jury heard that theory, beginning with opening statements, throughout the case. Appellant's theory of his defense does not alter the fact that the testimony presented at trial, if believed, clearly established each element of the offenses charged and thus was sufficient to convict.

{¶15} Likewise, Appellant's arguments in assignments one and two do not dispute the fact that probative evidence was presented on each element of the offenses. Instead, Appellant contends that the jury should have disregarded that evidence because Child X's father, Marco, sought and obtained the change of custody he desired only after he learned that Appellant was sexually abusing the children in their mother's household. Appellant attempted to convince the jury that he was an innocent victim of this "plot" by Marco to get custody of Child X. Clearly, the jury did not believe Appellant. In Appellant's arguments he does not deny that a great deal of evidence was presented against him. Instead, Appellant contends that the factfinder should have weighed the evidence differently. Again, questions of weight and credibility are primarily for the jury to resolve. *Jenks* and *Barnhart*, *supra*.

On review, the jury's verdict will not be disturbed where, as here, there is probative evidence in the record which goes to all of the elements of the crime and which, if believed, would convince the average mind beyond a reasonable doubt of the guilt of the accused. *Jenks* and *Barnhart, supra.* Appellant's first and second assignments of error are without merit and are overruled.

<u>Assignment of Error No. 3</u>

The trial court abused its discretion by failing to grant Mr. Brown's motion for a mistrial.

**{¶16}** A trial court's ruling on a motion for mistrial is reviewed for an abuse of discretion. *State v. Glover*, 35 Ohio St.3d 18, 517 N.E.2d 900 (1988). The term abuse of discretion "connotes more than an error of law or of judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." *State v. Adams*, 62 Ohio St.2d 151, 157, 404 N.E.2d 144 (1980). When evaluating whether the declaration of mistrial was proper in a particular case, both the Ohio and the United States Supreme Courts have "declined to apply inflexible standards, due to the infinite variety of circumstances in which a mistrial may arise." *Glover, supra*, at 19; also *Arizona v. Washington*, 434 U.S. 497, 513, 98 S.Ct. 824 (1978) citing *United States v. Dinitz*, 424 U.S. 600, 612, 96 S.Ct.1075 (1976) ("The adoption of a stringent standard of appellate review in this area [*i.e.* mistrial], therefore, would seriously impede the trial judge in the proper performance of his 'duty, in order to protect the integrity of the trial, to take prompt and affirmative action to stop . . . professional misconduct.'") The Ohio Supreme Court "grants great deference to the trial court's

discretion in this area, in recognition of the fact that the trial judge is in the best position to determine whether the situation in his courtroom warrants the declaration of a mistrial." *Glover, supra,* at 19. Where the facts of the case do not reflect unfairness to the accused, the public interest in insuring that justice is served may take precedence. *Arizona v. Washington, supra* at 505.

**{¶17}** Appellant bases his motion for mistrial on a single exchange between the state and a witness, the older sister of Child X. Appellant contends that the state's explanation as to how the sister elicited information concerning abuse from the two children was an attempt to introduce improper "other acts" testimony prejudicial to the defense. The actual question at trial: "And was that based on some information that you -- you and your father had received?" was never fully answered because defense counsel's objection was sustained. (Tr. Vol. II, pp. 263-264.) The trial court then gave a curative instruction: "I'm going to instruct you to disregard the last question and answer." (Tr. Vol. II, p. 264.)

**{¶18}** Appellant contends that this question, in combination with the three that preceded it, "did you go to give the girls a bath"; "did you ask them a question in the bathroom"; and "was that based on something that happened to you," combined to violate Evid.R. 404(B), which prohibits the use of other crimes, wrongs, or acts unless they are used to demonstrate motive, opportunity, intent, preparation, plan, knowledge, identity, or the absence of mistake or accident. (Tr. Vol. II, pp. 263-264.) Appellant argues that the witness's single word assent to each of the preceding questions impermissibly laid a foundation for the inference that the witness had been previously abused by Appellant.

{¶19} Appellant is mistaken in his belief that a violation of Evid.R. 404(B) occurred in this exchange. No evidence was actually admitted as a result of this testimony. No crime, wrong, or act engaged in or performed by Appellant was described in this testimony. Although the question alluded generally to "something that happened" to the witness, it is apparent that no connection was suggested between Appellant and the witness and the actual nature of the "something" was never disclosed. Appellant's belief that such an extremely specific inference is to be drawn from such a general statement is improbable. It is equally true, if not even more likely, that a jury might conclude that the witness knew someone who had a similar experience, had herself had an experience with a third party, or had recently been instructed to be alert for the possibility of abuse and taught to avoid certain situations. The connection Appellant claims is evident from these questions is tenuous at best. The trial court ended the line of questioning before any details concerning what the witness knew or experienced was divulged.

{¶20} There is no indication that the trier of fact drew any inference at all from this line of questioning, and absent evidence to the contrary "[a] jury is presumed to follow the instructions, including curative instructions, given it by a trial judge." *State v. Gardner*, 74 Ohio St.3d 49, 59, 656 N.E.2d 623 (1995) (in which the Supreme Court found that a police officer's reference to an appellant's prior arrests was not prejudicial and did not necessitate mistrial). This trial court did not abuse its discretion in failing to order a mistrial. *Id.* Appellant's third assignment of error is without merit and is overruled.

## Conclusion

**{¶21}** The judgment of the trial court was supported by sufficient probative evidence on all elements of the offenses charged. The conclusion reached by the trial court was not against the manifest weight of the evidence. The trial court did not err in denying Appellant's motion for mistrial, as it was clearly unwarranted based on this record. Appellant's three assignments of error are overruled and the judgment of the trial court is affirmed.

Vukovich, J., concurs.

DeGenaro, P.J., concurs.