[Cite as *State v. Billman*, 2019-Ohio-3696.]

# IN THE COURT OF APPEALS OF OHIO

SEVENTH APPELLATE DISTRICT
BELMONT COUNTY

STATE OF OHIO,

Plaintiff-Appellee,

v.

NICHOLAS THOMAS BILLMAN,

Defendant-Appellant.

---

**OPINION AND JUDGMENT ENTRY**
Case No. 18 BE 0026

---

Criminal Appeal from the
Court of Common Pleas of Belmont County, Ohio
Case No. 15 CR 252

**BEFORE:**
Cheryl L. Waite, Gene Donofrio, David A. D'Apolito, Judges.

---

**JUDGMENT:**
Affirmed.

---

*Atty. Dan Fry*, Belmont County Prosecuting Attorney and *Atty. J. Kevin Flanagan*, Assistant Prosecuting Attorney, 147-A West Main Street, St. Clairsville, Ohio 43950, for Plaintiff-Appellee

*Atty. Brent A. Clyburn*, White & Clyburn, 604 Sixth Street, Moundsville, West Virginia 26041, for Defendant-Appellant.

Dated:  September 10, 2019

_____

**WAITE, P.J.**

**{¶1}**  Appellant Nicholas Thomas Billman appeals an April 24, 2018 judgment entry convicting him of one count of failure to comply with an order or signal of a police officer.  Appellant argues that the state failed to prove he operated the vehicle that engaged in a high-speed chase with several cruisers from the Belmont County Sheriff's Office and Harrison County Sheriff's Office.  For the reasons provided, Appellant's argument is without merit and the judgment of the trial court is affirmed.

Factual and Procedural History

**{¶2}**  On October 24, 2015, the Harrison County Sheriff's Office requested permission from the Belmont County Sheriff's Office to conduct surveillance of Appellant, who was at a West Texas Roadhouse located in St. Clairsville, Belmont County.  (5/31/18 Trial Tr., p. 92.)  The request was granted.  At some point during the surveillance, Appellant and an unnamed acquaintance left the restaurant and exited the parking lot in a tan Ford Ranger truck.  Several Harrison County and Belmont County deputies followed the vehicle in unmarked cruisers.  These vehicles travelled northbound on SR 9.

**{¶3}**  The officers determined through radio contact that Sheriff David Lucas of the Belmont County Sheriff's Office was best suited to initiate a traffic stop of the truck. (5/31/18 Trial Tr., p. 99.)  Sheriff Lucas activated his emergency lights and siren.  In response, Appellant began driving at a high rate of speed, in excess of 85 miles per hour. Sheriff Lucas passed Appellant's vehicle and blocked a part of an intersection that led to a dangerous road.  The remaining cruisers continued pursuit of the truck.  At some point, the road sharply curves at a ninety degree angle to the left and then travels up a grade.

Case No. 18 BE 0026

When the vehicles approached the curve, Appellant lost control of the truck and hit a guardrail. The truck spun, causing it to face the opposite direction (southbound). Appellant resumed driving while the cruisers maneuvered to change direction and continue their pursuit. Appellant had not regained full control of his vehicle and struck one of the deputy's cruisers and then a civilian's car. When the truck came to a stop, the deputies saw Appellant exit the vehicle through the driver's side door and jump over the guardrail. (5/31/18 Trial Tr., pp. 171-172.) Dep. James Brian Carpenter exited his cruiser and followed Appellant over the guardrail. Dep. Carpenter tackled Appellant, causing both men to roll down an embankment. By this time, several deputies approached the area and arrested Appellant. Appellant resisted these efforts but was eventually taken into custody. The remaining deputies approached Appellant's vehicle and removed Appellant's passenger. While this male passenger was seated in the passenger seat, due to the extensive damage to the vehicle the deputies had to remove him by pulling him across the driver's seat and out the driver's side door. During the ensuing investigation, the deputies learned that the truck belonged to Anna Billman, who is either Appellant's sister or mother.

{¶4} On December 3, 2015, Appellant was indicted on one count of "failure to comply with order or signal of police officer," a felony of the third degree in violation of R.C. 2921.331(B), (C)(5)(a)(ii). On April 10, 2018, a jury trial commenced. The state presented the testimony of several Belmont County Sheriff Department deputies, including: Sheriff Lucas, Dep. Michael Sabel, Dep. Chad Kupla, Dep. Carpenter, and Dep. Steve Forro. The state also presented testimony from the civilian who was involved in the crash. Appellant's defense rested on the theory that none of the witnesses were in

a position to determine the identity of the driver during the encounter. Without proving that he was the driver, Appellant argued that the state could not prove that he failed to comply with an order by law enforcement to stop the vehicle. On April 11, 2018, the jury found Appellant guilty of the sole charged count.

{¶5} On May 31, 2018, the trial court sentenced Appellant to thirty-six months of incarceration with three years of discretionary postrelease control. The court ordered the sentence to run consecutively to Appellant's sentence in an unrelated robbery case. The court granted Appellant credit for 139 days served. It is from this entry that Appellant timely appeals.

### ASSIGNMENT OF ERROR

THE DEFENDANT-APPELLANT'S CONVICTION FOR "FAILURE TO COMPLY WITH ORDER OR SIGNAL OF POLICE OFFICER," A VIOLATION OF SECTION 2921.331(B)(C)(5)(a)(ii) OF THE OHIO REVISED CODE, A FELONY OF THE THIRD DEGREE, WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶6} Appellant argues that the state failed to present evidence he was the driver of the vehicle that led several members of the Belmont and Harrison County Sheriff's Departments on a high speed pursuit. Appellant explains that the encounter occurred late at night, as evidenced by the dash camera video from Dep. Carpenter's cruiser. In addition, the record contains evidence that it rained during the encounter. Despite these conditions, Dep. Kupla testified that he was able to identify Appellant as the driver. Appellant argues that as Dep. Kupla's cruiser drove in the opposite direction as the truck,

at a speed in excess of 85 miles per hour, Dep. Kupla could not reasonably identify the driver. Additionally, the Sheriff and other deputies involved in the pursuit were unable to identify the driver of the truck during the chase and the civilian who was involved in the crash also could not identify the driver. Hence, Appellant argues that his conviction is against the manifest weight of the evidence.

{¶7} The state's response is that the record does contain evidence that Appellant operated the truck during the chase, including Dep. Kupla's eyewitness testimony. The state also raises a consciousness of guilt argument, however, the trial court did not provide an instruction regarding consciousness of guilt to the jury and this argument appears to be misplaced.

{¶8} Weight of the evidence concerns "the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other." (Emphasis deleted.) *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). It is not a question of mathematics, but depends on the effect of the evidence in inducing belief. *Id.* Weight of the evidence involves the state's burden of persuasion. *Id.* at 390, (Cook, J. concurring). In cases involving a weight of the evidence challenge, an appellate court reviews the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses, and determines whether, in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed. *State v. Lang*, 129 Ohio St.3d 512, 2011-Ohio-4215, 954 N.E.2d 596, ¶ 220, citing *Thompkins*, at 387. This discretionary power of the appellate court to reverse a conviction is to be exercised only in the exceptional case in which the evidence weighs heavily against the conviction. *Id.*

{¶9} "[T]he weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts." *State v. Hunter*, 131 Ohio St.3d 67, 2011-Ohio-6524, 960 N.E.2d 955, ¶ 118, quoting *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph one of the syllabus. The trier of fact is in the best position to weigh the evidence and judge the witnesses' credibility by observing their gestures, voice inflections, and demeanor. *Seasons Coal Co. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984). The jurors are free to believe some, all, or none of each witness' testimony and they may separate the credible parts of the testimony from the incredible parts. *State v. Barnhart*, 7th Dist. Jefferson No. 09 JE 15, 2010-Ohio-3282, ¶ 42, citing *State v. Mastel*, 26 Ohio St.2d 170, 176, 270 N.E.2d 650 (1971). When there are two fairly reasonable views of the evidence or two conflicting versions of events, neither of which is unbelievable, this Court will not choose which one is more credible. *State v. Gore*, 131 Ohio App.3d 197, 201, 722 N.E.2d 125 (7th Dist.1999).

{¶10} Appellant solely contests whether the state established that he operated the truck during the encounter. He appears to concede that whoever operated the vehicle did, in fact, commit the offense. Contrary to Appellant's arguments, the record contains voluminous testimony supporting the jury's determination that he was the driver of the truck.

{¶11} The following occurred during Dep. Kupla's testimony:

[Kupla]. When I was trying to squeeze that lane, the suspect's vehicle rode the guardrail, passed us in my vehicle and was barely an inch away from taking out our vehicle as he passed us.

Case No. 18 BE 0026

[State]. Okay. Did you identify or could you see, given the fact that you said you were an inch away, and I assume that is side by side?

[Kupla]. Yes. We were -- the vehicle passed us side by side, and I mean, we were very, very close together.

[State]. Could you identify who the driver was?

[Kupla]. Yes, I could.

[State]. And who was that?

[Kupla]. It was [Appellant].

(5/31/18 Trial Tr., pp. 144-145.)

{¶12} Dep. Kupla further testified that he approached the vehicle after Appellant fled and observed a man sitting in the passenger's seat. (5/31/18 Trial Tr., p. 147.) Dep. Kupla testified that the driver's seat was unoccupied when he approached the vehicle. Dep. Kupla attempted to remove the passenger through the passenger side door, however, the door would not open due to the damage to that side of the vehicle. Dep. Kupla pulled the man out of the passenger seat and across the unoccupied driver's seat before removing and handcuffing him.

{¶13} Sheriff Lucas testified that once the truck came to a stop after the last crash, Appellant immediately exited the driver's side door and jumped over the guardrail. (5/31/18 Trial Tr., p. 109.) Sheriff Lucas stated that he assisted Dep. Kupla in removing Appellant's passenger from the passenger seat. Sheriff Lucas confirmed that the man

had to be pulled from the passenger's seat and across the driver's seat in order to remove him from the vehicle. Dep. Michael Sabel testified that he also helped remove the passenger. (5/31/18 Trial Tr., pp. 122-123.) He testified that Appellant was not the man he helped pull out of the passenger's seat.

{¶14} Dep. Carpenter testified that he exited his cruiser once he saw the truck crash and that he saw Appellant outside of the driver's side door. (5/31/18 Trial Tr., pp. 172-174.) Dep. Carpenter ordered Appellant to stop but he ignored the command and jumped over the guardrail. Dep. Carpenter pursued and eventually tackled Appellant, causing both men to roll down an embankment. By this time, several deputies had arrived and assisted in arresting Appellant, who continued to resist the deputies' efforts. During Dep. Carpenter's testimony, a video from his dash camera was played for the jury. The video showed the moment Dep. Carpenter's cruiser entered pursuit of the truck and also recorded the crash that ended the pursuit. The camera did not capture Appellant's vehicle after the crash, thus Appellant's attempted escape and the removal of his passenger was not recorded.

{¶15} Dep. Forro testified that he ran the vehicle's information through the system and learned that it was registered to Anna Billman, who is either Appellant's mother or sister. (5/31/18 Trial Tr., p. 185.)

{¶16} The jury had before it testimony of at least one witness who saw Appellant driving the truck. Dep. Kupla stated that Appellant's vehicle passed him at a close distance, close enough to almost cause a crash, and that Appellant was in the driver's seat. The jury heard testimony from three witnesses (Sheriff Lucas, Dep. Sabel, and Dep. Kupla) who helped remove Appellant's passenger from the passenger's seat.

Additionally, three witnesses (Sheriff Lucas, Dep. Kupla, and Dep. Carpenter) testified they saw Appellant exit the truck from the driver's side door.

**{¶17}** While Appellant now argues that he could have been sitting in the passenger seat and exited through the driver's side door due to the damage to the passenger's side, there is credible evidence in this record to contradict Appellant's claim. The evidence also shows that the driver's seat was unoccupied when the deputies approached the truck, and that the truck belonged to Anna Billman, who is either Appellant's mother or sister.

**{¶18}** There is competent and credible evidence in this record that, if believed, establishes that Appellant operated the truck during the encounter. The jury obviously believed this evidence. Appellant's argument is without merit and is overruled.

**{¶19}** Appellant mentioned two additional matters *pro se*: (1) the trial court erroneously refused to remove Appellant's trial counsel and (2) jury tampering occurred during the *voir dire* process. Contrary to the state's assertion, neither was raised as an assignment of error. Instead, these matters were merely mentioned at the end of Appellant's sole assignment of error. Although the state spends significant time analyzing Appellant's *pro se* comments, these were not properly raised or actually argued by Appellant's counsel. In fact, Appellant's counsel opines that, if addressed, these matters would be meritless.

### Conclusion

**{¶20}** Appellant argues the state failed to produce competent and credible evidence that he operated the vehicle that led several sheriff's deputies on a high-speed pursuit. However, at least one deputy identified Appellant as the driver during the pursuit

and several deputies testified that another person was seated in the passenger's seat at the time the vehicle came to a stop.  For the reasons provided, Appellant's argument is without merit and the judgment of the trial court is affirmed.

Donofrio, J., concurs.

D'Apolito, J., concurs.

---

For the reasons stated in the Opinion rendered herein, the assignment of error is overruled and it is the final judgment and order of this Court that the judgment of the Court of Common Pleas of Belmont County, Ohio, is affirmed. Costs waived.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

**<u>NOTICE TO COUNSEL</u>**

**This document constitutes a final judgment entry.**